STATE

v.

**Ralph A. PARI.**

No. 87–471–C.A.

Supreme Court of Rhode Island.

Feb. 3, 1989.

James E. O'Neil, Atty. Gen., Caroline Cole Cornwell, Annie Goldberg, Asst. Attys. Gen., for plaintiff.

Stephen Robinson, George M. Cappello, Dept. of Corrections, amicus.

John Tramonti, Jr., Karen Ellsworth, Providence, for defendant.

## OPINION

SHEA, Justice.

This case is before the Supreme Court on an appeal by the defendant, Ralph A. Pari (Pari), from the Providence County Superior Court order denying his motion to compel compliance with a court order. Through this motion Pari sought to compel the Department of Corrections (the department) to comply with a January 21, 1988 court order placing Pari in a minimum-security, work-release facility in the Adult Correctional Institutions (ACI). For the following reasons we affirm the Superior Court.

On January 11, 1988, Pari was sentenced to serve twelve consecutive thirty-day sentences after pleading nolo contendere to eleven counts of embezzlement, G.L.1956 (1981 Reenactment) §§ 11–41–3 and 11–41–5, and one count of accessing a computer for fraudulent purposes, G.L.1956 (1981 Reenactment) § 11–52–2. Pursuant to G.L. 1956 (1981 Reenactment) § 12–19–2 the trial justice ordered that defendant begin serving his sentence at a minimum-security, work-release facility at the ACI.

In April of 1988, Pari was indicted for income tax evasion in the United States Federal District Court of Rhode Island, where he was released on $5,000 personal recognizance. Because of this indictment, and pursuant to the existing policies of the department, he was transferred from the minimum-security, work-release facility to a medium-security facility pending the resolution of the federal charges. Contending that this transfer was a violation of his original sentencing order and that the department was without authority to make such a transfer under existing legislation, Pari filed a motion to compel compliance with the sentencing order of the Superior Court. His motion was denied, and he now appeals to this court.

The director of the Department of Corrections (the director) has been given broad discretion in the administration of his department through a variety of statutory authorities. On a general level the director has been given broad statutory authority to regulate and administer the department's facilities, programs, and inmate population. The director may

"(c) Establish and enforce standards for all state correctional facilities;

\* \* \* \* \* \*

"(l) Establish a system of classification of persons committed to the custody of the department for the purpose of developing programs for each person;

"(m) Determine at the time of commitment, and from time to time thereafter, the custody requirements and program needs of each person committed to the custody of the department and assign or transfer those persons to appropriate facilities and programs;

\* \* \* \* \* \*

"(v) Make and promulgate necessary rules and regulations incident to the exercise of his or her powers and the performance of his or her duties including but not limited to rules and regulations regarding nutrition, sanitation, safety, discipline, recreation, religious services, communication, and visiting privileges, classification, education, training, employment, care, and custody for all persons committed to correctional facilities." G.L.1956 (1988 Reenactment) § 42–56–10.

■ On a more specific level the two enabling statutes authorizing the development of the work-release program give the director the authority to develop and to operate a minimum-security, work-release program pursuant to the guidelines contained therein. *See* G.L.1956 (1981 Reenactment) § 12–19–2, as amended by P.L.

1988, ch. 619, § 1, and § 42–56–21. Upon being sentenced for his particular crime or crimes, this defendant could qualify to participate in the ACI's minimum-security, work-release program in two ways. First, as part of the department's standard classification/reclassification procedures,[1] an inmate not convicted of a sex offense involving minors who has served the required minimum time in his initial security classification and who is recommended for work-release by the department's classification board may, upon the director's approval,

> "be permitted to work at paid employment for his or her own benefit or participate in a training or educational program within or without the state of Rhode Island on a voluntary basis outside the institution lot * * *. " Section 42–56–21(a).

Second, as in this case, an offender may be placed directly into the ACI's work-release program by court order if

> "[t]he court upon the sentencing of a first time offender, excluding capital offense and sex offense involving minors, may in appropriate cases sentence said person to a term of imprisonment, and allow said person to continue in his or her usual occupation or education and shall order said person to be confined in a minimum security facility at the A.C.I. during his nonworking or study hours." Section 12–19–2.

However, regardless of how an offender comes to be in the work-release program, his stay there is subject to any and all "conditions and restrictions" deemed necessary by the director or his or her designee, § 42–56–21(a) and § 12–19–2. An offender may also be recalled from such release at any time by the assistant director of adult services, subject to the approval of the director, if he or she

> "believes or has reason to believe the peace, safety, welfare, or security of the community may be endangered by the

prisoner being under that release status. Any prisoner recalled under this provision, shall be presented to the next regularly scheduled meeting of the classification board for their further consideration." Section 42–56–21(b). *See also* § 12–19–2.

In reading these two statutes, we find that they both deal with the same subject matter in a consistent manner and are in pari materia. They work together in harmony with each other, as well as with the director's general powers. *State v. Souza,* 456 A.2d 775, 781 (R.I.1983). Giving the words of each statute their plain and ordinary meaning, *State v. O'Rourke,* 463 A.2d 1328, 1330 (R.I.1983), the court finds that the Legislature has created two alternative procedures for placing a convicted offender in the work-release program: a standard departmental procedure and a special court-ordered procedure that allows a trial justice to bypass the standard procedure if certain requirements are met. However, once an offender is placed into the work-release program, the distinction between these statutory procedures disappears completely. Except for minor differences, the two statutes are identical in their delegation of authority to the department to regulate a prisoner's recall from work-release. Thus this defendant Pari is not entitled to special considerations or procedures in the department's administration of his sentence simply because he entered the work-release program pursuant to a § 12–19–2 court order rather than through the standard departmental procedure described in § 42–56–21. He has no protected liberty interest, statutory or otherwise, to remain in work-release, nor does the department have any obligation to consider him a permanent participant in the work-release program. *Lerner v. Gill,* 463 A.2d 1352, 1365 (R.I.1983).

▮ The defendant argues that under his § 12–19–2 court-ordered work-release

---

1. The department's statutory authority for receiving, orienting, studying, and initially classifying new offenders is contained in G.L.1956 (1988 Reenactment) §§ 42–56–29, –30, –31. Statutory authority to reclassify inmates is given to the director through § 42–56–10, sub-sections

(*l*) and (m), and departmental policy on classification and reclassification is contained in the Rhode Island Department of Corrections Administrative Policy Statement regarding Criteria for Classification and Reclassification of Inmates, 1.19.01 (1981).

assignment the only "conditions and restrictions" that the director may impose are those dealing with the details of a prisoner's release—type of job, type of education, hours, location, and so forth—and that the sanction of recalling and transferring a prisoner is limited to times when a prisoner can be perceived as a danger to the community. Therefore, he contends, since the charges against him could not possibly make him out to be a danger to the community, the department exceeded its statutory authority by transferring him from work-release to medium security. We disagree.

We find this reading of § 12–19–2 to be an unnecessarily narrow interpretation of the statutory authority and discretion granted to the director. When § 12–19–2 is read in conjunction with the director's general powers to establish classification systems, to determine custody requirements, and to promulgate rules and regulations, § 42–56–10(*l*), (m) and (v), we believe his authority to condition and to restrict a prisoner's release, §§ 42–56–21 and 12–19–2, contemplates a complete legislative delegation of the responsibility for establishing and administering the rules, regulations, and policies necessary to run a work-release program. In our opinion, such authority also implicitly includes the discretion to determine when a prisoner qualifies to enter the work-release program and when he is subject to removal therefrom.

In this case the director established a written policy conditioning an inmate's eligibility for work-release on an absence of outstanding felony warrants or indict-ments. Rhode Island Department of Corrections Administrative Policy Statement regarding Criteria for Classification and Reclassification of Inmates, 1.19.01 § V.A.5 (1981). Relying on this written policy, the department further developed an informal (unwritten) policy whereby prisoners assigned to work-release are recalled and transferred to medium security when such a warrant or indictment arises during their stay in the work-release program. In light of the statutory authority discussed above, we find the department's policy of removing prisoners with outstanding warrants or indictments involving felonies from work-release to be a logical extension of the department's eligibility requirements for work-release, properly established within the director's discretion.

For these reasons we find the department's transfer of the defendant from work-release to medium security because of his subsequent federal indictment to be within the authority and discretion granted to the department by the Legislature in § 42–56–10(c), (*l*), (m) and (v); § 42–56–21; and § 12–19–2.

Therefore, the defendant's appeal is denied and dismissed, the order appealed from is affirmed, and the papers of the case are remanded to the Superior Court.