STATE

v.

**Brandy GRAFF.**

**No. 2010–3–C.A.**

Supreme Court of Rhode Island.

April 18, 2011.

Patricia A. Coyne–Fague, Chief Legal Counsel, for Rhode Island Department of Corrections.

Susan T. Perkins, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

**OPINION**

Justice ROBINSON for the Court.

The Rhode Island Department of Corrections (DOC) appeals from a Superior Court order granting the motion of the defendant, Brandy Graff, to modify the nature of her incarceration by transferring her to "ACI, Minimum Security, work release." On appeal, the DOC argues that the hearing justice erred in granting the motion; it contends: (1) that a motion to modify a sentence is not provided for by the Superior Court Rules of Criminal Procedure; (2) that classification of inmates is the prerogative of the director of the DOC—and that, accordingly, Ms. Graff is subject to the DOC's existing work-release procedure; and (3) that the Superior Court's classification of Ms. Graff violated the doctrine of separation of powers.

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the record, the memoranda submitted by the parties, and the

oral arguments of counsel, we are satisfied that this appeal may be decided without further briefing or argument.

For the reasons set forth in this opinion, we vacate the order of the Superior Court.

## I

### Facts and Travel

On April 23, 2007, defendant Brandy Graff, who was then twenty years old, pled *nolo contendere* to two counts of driving under the influence, death resulting. On June 18, 2007, Ms. Graff received, with respect to each count, a concurrent sentence of fifteen years, ten years to serve and five years suspended with probation.[1] On June 26 of that year, a judgment of conviction entered.

### A

### The Defendant's "Motion to Modify Sentence"

On April 27, 2009, nearly two years after her original sentencing, defendant filed a "Motion to Modify Sentence for Court Ordered Work Release"[2]—asking the Superior Court to modify her sentence so as to allow her to take part in the work-release program during the period of her incarceration at the Adult Correctional Institutions (ACI). (Counsel's certificate of service indicates that a copy of the just-referenced motion was sent to the Office of the Attorney General, but there is no indication that a copy was served upon the DOC.)

1. Significantly, defendant was not ordered to work release when she was sentenced on June 18, 2007.

2. We shall hereinafter more succinctly refer to this motion as the "motion to modify sentence."

3. The justice of the Superior Court who presided over the hearings that eventuated in the instant appeal was the same justice who had sentenced defendant on June 18, 2007.

The defendant's motion to modify sentence was granted by a justice of the Superior Court as reflected in an order issued on May 26, 2009.[3] Three days later, on May 29, the DOC filed a motion to vacate the order of May 26.

### B

### The DOC's Motion to Vacate

In support of its motion to vacate, the DOC asserted that the Superior Court was without authority to order defendant to take part in the work-release program because only the director of the DOC has been authorized by the General Assembly to allow a prisoner to participate in that program. More specifically, the DOC cited this Court's opinion in *State v. Pari*, 553 A.2d 135 (R.I.1989), to support its contention that there are only two avenues whereby a defendant may gain access to participation in the work-release program: (1) by a court order to that effect at the time of sentencing where the relevant statute so permits (see G.L.1956 § 12–19–2);[4] or (2) by placement in the program pursuant to the DOC's "standard classification/re-classification system." Accordingly, in the DOC's view, since Ms. Graff was not ordered to the work-release program at the time of her sentencing, the only available avenue whereby Ms. Graff might participate in the program would have been through the DOC's classification procedures.

4. General Laws 1956 § 12–19–2 provides in pertinent part as follows:

"(b) The court upon the sentencing of a first time offender, excluding capital offense and sex offense involving minors, may in appropriate cases sentence the person to a term of imprisonment, and allow the person to continue in his or her usual occupation or education and shall order the person to be confined in a minimum security facility at the A.C.I. during his or her non-working or study hours."

In response to the DOC's motion to vacate, Ms. Graff argued to the Superior Court that the DOC did not have "standing" to present its motion to vacate. More specifically, she asserted that "the Department of Attorney General became the 'voice' of the DOC, and put them on notice that this proceeding was taking place on May 26." [5] On that basis, defendant contended that the DOC was "estopped" from being entitled to ask the court "to do anything." Therefore, in defendant's view, since the DOC "elected to have the Department of Attorney General argue" on behalf of the DOC at the initial hearing (on May 26), the DOC was required to "rely on their counsel, the Department of Attorney General."

On July 10, 2009, a hearing was held on the DOC's motion to vacate. At the conclusion of that hearing, the hearing justice first ruled that the DOC did, in fact, have standing to present and argue its motion to vacate. The hearing justice then ruled that the DOC, "not having been noticed by the defendant in making this motion, certainly would have had * * * the right to be heard." [6] Accordingly, the hearing justice vacated the order of May 26. There then immediately commenced a new hearing on the motion.[7]

## C

### The Second Hearing on Defendant's Motion to Modify Sentence

#### 1. The Contentions of the Parties

In support of her motion to modify sentence, defense counsel acknowledged the

precedential significance of *State v. Pari,* 553 A.2d 135 (R.I.1989), but she suggested that the fact that that case was two decades old somehow lessened its value as precedent. More tellingly, she also contended that there is ambiguity as to when "sentencing" actually occurs and that that ambiguity militated in favor of the court's granting her motion; in counsel's view, sentencing is not a discrete, one-time event. The following language from defense counsel's argument sufficiently summarizes her contentions:

> "*State v.* [*Pari*] is a 1989 case, Judge, and all it says is that you can do it at the time of sentencing. When is sentencing? There is not a whole lot of case law out there on whether or not you can do it on a motion to reduce, a motion to modify, a post-conviction relief. It's all in the realm of sentencing. And this [c]ourt, as you know, has the power [to] sentence a defendant to anything.
>
> " * * *
>
> "And I would ask you to consider that in standing by your decision and perhaps if I may make some new law, *State v.* [*Pari*] is 1989, Judge, there is no other case set talking about whether a [c]ourt can order a defendant into work release. [Section] 12–19–2 says at sentencing, but you know that this [c]ourt has the authority to change sentences, to modify sentences, to vacate sentences." [8]

At the hearing on July 10, 2009, the prosecutor responded with directness to defen-

---

**5.** It is unclear to whom the pronoun "them" in the quoted clause refers, but the instant appeal can be decided without resolution of that syntactical issue.

**6.** We understand the reference to "this motion" in the language quoted in the text to mean defendant's motion to modify sentence of April 27, 2009.

**7.** Attorneys from both the Office of the Attorney General and the Department of Corrections participated in the new hearing.

**8.** The transcript actually makes reference to "*State v. Perry.*" However, it is clear from the context that the case which the court reporter

dant's contention that there is a question as to just *when* sentencing occurs. He argued as follows:

> "[F]or the record I can't imagine how there is any confusion about what sentencing means. Sentencing is sentencing, and that happened a long time ago in this case."

At the same July 10 hearing, counsel for the DOC argued in opposition to defendant's motion to modify sentence; she relied on procedural grounds, and she also responded to defendant's contentions regarding the meaning of the term "sentencing." The following passage is illustrative of the DOC's position with respect to the latter issue:

> "I'm a bit perplexed I think by what I perceive to be the argument—that we don't really know what sentencing is. I think we do know what sentencing is. It's on the docket. Sentencing was June 18, 2007. To suggest that sentencing is something that continues indefinitely into the future, I don't think is supported by case law or frankly even common sense. [Section] 12–19–2 does give your Honor the ability to order work release to a first time offender if he qualifies at sentencing. Any change to a defendant's sentence, whether it be a reduction or * * * modification is pursuant to Rule 35 which states that you have 120 days in which to make such a motion."

The DOC also alluded to policy concerns with respect to creating yet another potential route to work release:

> "I would submit [that] by ordering an inmate into [the] work release program who does not qualify under the rules of the Department of Corrections; it creates an issue because it is now opening the floodgates, if you would, to every other inmate at the ACI who doesn't currently qualify for work release to treat one inmate differently than all of the other inmates who has to follow the rules."

Finally, addressing defendant's contention about the relatively old nature of the *Pari* case, counsel for the DOC argued that the age of a judicial opinion should not have a bearing on whether or not the holding set forth in the opinion is to be followed; she added that the *Pari* case has never been overruled and remains "bedrock law."

## 2. The Ruling of the Hearing Justice

In rendering his ruling on defendant's motion to modify sentence, the hearing justice emphasized that he was relying on G.L.1956 § 31–27–2.2 [9] (the statute which, *inter alia*, establishes the sentencing parameters for the crime to which defendant pled *nolo contendere*) rather than on § 12–19–2 (the general work-release statute). The hearing justice ruled that, in addition to the two paths to work release that are described in *State v. Pari* (wherein § 12–19–2 was construed), § 31–27–2.2 provides "another way" pursuant to which he, as the sentencing judge, could order defendant to the work-release program. He explained his thinking in that regard as follows:

> "[T]he defendant in this case was convicted under General Laws [§ ] 31–27–

recorded as *State v. Perry* is actually *State v. Pari*, 553 A.2d 135 (R.I.1989).

9. General Laws 1956 § 31–27–2.2(b) provides in pertinent part as follows:
"(1)(i) Every person convicted of a first violation shall be punished by imprison-ment in the state prison for not less than five (5) years and for not more than fifteen (15) years, *in any unit of the adult correctional institutions in the discretion of the sentencing judge * * *.*" (Emphasis added.)

2.2, which provides another way in which a person may be ordered to the work release program based upon the discretion provided to the Judge, *the sentencing judge* under this particular statute, which is specific as to the crime of drunk driving, death resulting. * * * And this [c]ourt in view of the directive from the general assembly giving it discretion in these cases of drunk driving, death resulting, to *the sentencing judge* to fashion an appropriate sentence believes that this statute provides this [c]ourt with the discretion to order Miss Graff to work release *at this time.*" (Emphasis added.)

Having indicated what he perceived to be the statutory basis for his belief that he was authorized to consider and possibly grant the motion to modify sentence long after he had sentenced defendant for driving under the influence, death resulting, the hearing justice proceeded to briefly address the merits of the motion before him. He summarized as follows the primary considerations that informed his decision to grant the motion:

"[I]n weighing, if you would, the various factors that this [c]ourt must take into account in sentencing and having given great weight to her lack of remorse or her lack of what I consider to be a sincere expression of remorse at the time of the *original sentencing*, the [c]ourt, if you will, gave her the max or the maximum, but now feels that taking into account her new, if you would, realization of the horrific crime that she committed or the crimes and her willingness to accept responsibility for her actions and the effort she made at rehabilitating herself and paying her debt to society and redeeming herself, the [c]ourt—and for the reasons previously stated—will grant the motion to allow Miss Graff to continue along this path." (Emphasis added.)

After the hearing justice granted defendant's motion and ordered defendant transferred to the work-release program, counsel for the DOC asked him to stay his order pending the DOC's appeal to this Court. In granting the DOC's request for a stay, the hearing justice commented, with commendable frankness, as follows: "I would say there is certainly a substantial legal issue as to what sentencing means or when sentencing occurs, whether it's a one-time event or [an] ongoing process * * *."

An order granting defendant's motion to modify sentence was entered on July 21, 2009. The DOC filed a timely notice of appeal.

**D**

### Issues Raised on Appeal

On appeal, the DOC contends that the hearing justice erred in granting the motion for the following reasons: (1) a motion to modify a sentence is not provided for by the Superior Court Rules of Criminal Procedure; (2) the classification of inmates in the Adult Correctional Institutions is the prerogative of the director of the DOC—and, accordingly, Ms. Graff is subject to the DOC's existing work-release procedures; and (3) the Superior Court's order changing the classification of Ms. Graff violated the doctrine of separation of powers.

In contrast, defendant contends that the hearing justice's ruling was correct; she argues: (1) that the "specific statute, RIGL § 31–27–2.2[,] governs the general statute, RIGL § 12–19–2[;]" and (2) that, because the *Pari* case "does not give a definition of the word 'sentencing' * * * [and] is silent to this issue[,]" it follows that the hearing justice had the authority to transfer defendant to the work-release

program, since he was "the sentencing judge" as that term is used in § 31–27–2.2.

## II

### Standard of Review

 This Court reviews questions of statutory interpretation in a *de novo* manner. *In re Brown,* 903 A.2d 147, 149 (R.I. 2006); *see also State v. Germane,* 971 A.2d 555, 573 (R.I.2009); *State v. Brown,* 898 A.2d 69, 76 (R.I.2006). In our approach to this interpretive task, we are mindful that "our ultimate goal is to give effect to the General Assembly's intent." *Martone v. Johnston School Committee,* 824 A.2d 426, 431 (R.I.2003). We have further stated, however, that "[t]he plain statutory language is the best indicator of legislative intent." *State v. Santos,* 870 A.2d 1029, 1032 (R.I.2005); *see also Martone,* 824 A.2d at 431; *Fleet National Bank v. Clark,* 714 A.2d 1172, 1177 (R.I.1998); *Little v. Conflict of Interest Commission,* 121 R.I. 232, 237, 397 A.2d 884, 887 (1979) ("It is a primary canon of statutory construction that statutory intent is to be found in the words of a statute, if they are free from ambiguity and express a reasonable meaning."). And we have indicated that "a clear and unambiguous statute will be literally construed." *Martone,* 824 A.2d at 431; *see also Planned Environments Management Corp. v. Robert,* 966 A.2d 117, 121 (R.I.2009); *Santos,* 870 A.2d at 1032. Accordingly, "[w]hen the language of a statute is clear and unambiguous, we must enforce the statute as written by giving the words of the statute their plain and ordinary meaning." *Harvard Pilgrim Health Care of New England, Inc. v. Gelati,* 865 A.2d 1028, 1037 (R.I.2004); *see also Germane,* 971 A.2d at 574; *D'Ambra v.*

*North Providence School Committee,* 601 A.2d 1370, 1374 (R.I.1992); *City of Warwick v. Aptt,* 497 A.2d 721, 724 (R.I.1985).

## III

### Analysis

 Our consideration of the DOC's appeal requires us to closely review the language of § 31–27–2.2, the statute which establishes, *inter alia,* the sentencing parameters for the crimes to which defendant pled *nolo contendere.* (It will be recalled that the hearing justice relied upon § 31–27–2.2 in concluding that he in effect had residual authority to order defendant to work release long after he had sentenced her.[10]) Section 31–27–2.2(b)(1)(i) provides in pertinent part as follows:

> "Every person convicted of a first violation shall be punished by imprisonment in the state prison for not less than five (5) years and for not more than fifteen (15) years, *in any unit of the adult correctional institutions in the discretion of the sentencing judge * * *."* (Emphasis added.)

The statute clearly and unambiguously vests the sentencing judge with discretion to sentence first-time offenders under this statute to any unit of the ACI. In the instant case, it is undisputed that defendant was not ordered to the work-release program at the time of her sentencing on June 18, 2007. A review of the hearing justice's decision to grant defendant's motion to modify sentence, which decision was announced almost two full years after her sentencing, suggests that it was predicated on a notion that sentencing is *not* a singular event and on a belief that the

---

**10.** Even though the hearing justice did not rely upon § 12–19–2 as a statutory basis for his ruling that the motion to modify should be granted, we nonetheless pause to observe that

we perceive no merit in defendant's argument before the Superior Court suggesting that our decision in *State v. Pari* has somehow ceased to be good law due to the passage of time.

judicial officer who is "the sentencing judge" referred to in § 31–27–2.2 *continues to have* the discretionary powers accorded by that statute even after the sentence has been meted out.[11]

We reject as erroneous the hearing justice's very expansive interpretation of sentencing and of § 31–27–2.2. There is nothing in the statute that in any way suggests that sentencing is some sort of ongoing process. Rather, sentencing is, in our view, a discrete act. We view "the discretion" that this statute accords to "the sentencing judge" as unambiguously referring to a discretion that is exercisable when the judge pronounces *the sentence* and that, except as otherwise explicitly provided for in Rule 35 of the Superior Court Rules of Criminal Procedure, ceases to exist after that event takes place.[12]

Our understanding of the discrete nature of sentencing and of the meaning of the term "sentencing judge" in § 31–27–2.2 is consistent with dictionary definitions of the English word "sentence."[13] For example, the New Oxford American Dictio-

nary 1591 (3d ed. 2010) defines "sentence" in the legal context as meaning "the punishment assigned to a defendant found guilty by a court" and as punishment "fixed by law for a particular offense." Similarly, The American Heritage Dictionary of the English Language 1586 (4th ed. 2006) defines the noun "sentencing" as: "1. The act of pronouncing a judicial sentence on a defendant. 2. The sentence so pronounced." Nothing in those definitions is even remotely suggestive of an ongoing process. *See also Corey v. United States*, 375 U.S. 169, 174, 84 S.Ct. 298, 11 L.Ed.2d 229 (1963) ("Final judgment in a criminal case * * * means sentence. The sentence is the judgment.") (internal quotation marks omitted).

We consider it noteworthy that Rule 35 (entitled, "Correction, decrease or increase of sentence") is replete with language that presupposes that the imposition of sentence is a discrete act and not a sort of continuing process which (in addition to what is specifically authorized by Rule 35) the sentencing judge may from time to

---

11. The infirmity of defendant's thesis as to the sentencing judge's continuing discretionary authority became evident during oral argument. Counsel for defendant was asked from the bench whether or not her client would have been able to seek relief if the judge who sentenced defendant had retired before her motion to modify came before the court. Counsel responded that, pursuant to the interpretation of "sentencing judge" that she was urging this Court to adopt, her client's ability to seek relief would, in fact, depend upon whether or not the particular judge who sentenced Ms. Graff was still available to consider the motion to modify. In our view, such an interpretation would yield an absurd result, and it is a fundamental principle that we "will not construe a statute to reach an absurd result." *See Kaya v. Partington*, 681 A.2d 256, 261 (R.I.1996); *see also D'Ambra v. North Providence School Committee*, 601 A.2d 1370, 1374 (R.I.1992); *Defenders of Animals, Inc. v. Department of Environmental Management*, 553 A.2d 541, 544 (R.I.1989) (stating

that this Court "will not interpret legislative enactments in a manner that * * * would produce an unreasonable result"). One can search our jurisprudence in vain to find an instance where the possibility of relief being available to a convicted defendant depends on whether or not the particular judge who sentenced the defendant is still available to consider the prayer for relief.

12. Undoubtedly, the judicial officer who has pronounced a particular sentence may, even years after the fact, be referred to as "the sentencing judge." However, that term simply describes the person who, at a particular moment in time, pronounced sentence. The actual imposition of sentence itself is a discrete act.

13. It is well established that "[i]n a situation in which a statute does not define a word, courts often apply the common meaning as given by a recognized dictionary." *Defenders of Animals, Inc.*, 553 A.2d at 543.

time revisit. Significantly, the 120–day period within which most Rule 35 motions must be filed is measured from the date when "sentence is imposed."

The hearing justice in the instant case had the authority to order the defendant to the work-release program at the time of her sentencing on June 18, 2007, but he did not have the continuing authority to thereafter grant the defendant's "Motion to Modify Sentence for Court Ordered Work Release." In our opinion, he erred in doing so.

## IV

## Conclusion

For the reasons set forth in this opinion, we vacate the order of the Superior Court. The record in this case may be returned to that tribunal.