**Supreme Court**

No. 2009-147-Appeal.
(PM 05-55)

| Hector Jaiman | : |
| v. | : |
| State of Rhode Island. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Hector Jaiman        :

v.        :

State of Rhode Island.        :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Justice Flaherty, for the Court.** The applicant, Hector Jaiman, appeals to this Court from the Superior Court's denial of his application for postconviction relief. Jaiman previously was convicted of first-degree murder, assault with intent to murder, and assault with a dangerous weapon. Before this Court, Jaiman contends that his application for postconviction relief should have been granted based on a violation of his right to due process. He also argues that he was prejudiced by the ineffective assistance of his trial counsel because his counsel failed to object to what the applicant maintains was improper witness vouching and because his trial counsel failed to object to a first-degree murder instruction that the trial justice imparted to the jury. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court denying the application for postconviction relief.

# I
## Facts and Travel

The factual background of this case is described at length in the direct appeal of defendant's conviction—viz., State v. Jaiman, 850 A.2d 984, 985-87 (R.I. 2004). For the sake of brevity, we shall summarize only the facts that are relevant to the issues raised by this appeal.

## A
### Background

On the evening of September 18, 1993, Jaiman was operating a motor vehicle in Central Falls accompanied by Ariel Muriel. As they traveled, the pair encountered a car driven by Albert Robertson, in which Thomas DeGrafft and Dean Zigbuo were passengers. As the two cars drove side-by-side, Muriel fired a handgun into Robertson's car. Robertson was struck, DeGrafft was mortally wounded, and Zigbuo escaped without injury.

On May 12, 1994, Jaiman and Muriel were charged with six criminal charges, including: murder of DeGrafft, assault with intent to murder Robertson, conspiracy to murder DeGrafft, conspiracy to assault Robertson, assault with a dangerous weapon upon Zigbuo, and conspiracy to commit felony assault upon Zigbuo. While he was incarcerated awaiting trial, Muriel entered into a plea bargain with the Attorney General. Muriel agreed that, in exchange for his testimony against Jaiman, he would plead guilty to a reduced charge of the second-degree murder of DeGrafft. After his plea was accepted by a justice of the Superior Court, Muriel received a sentence of fifty years for second-degree murder, with twenty years to serve and thirty years suspended, and a guarantee that he would appear before the Parole Board in July 2000. In accordance with the plea bargain, Muriel, through an interpreter, gave an unsworn seven-page statement to the Central Falls Police, in which he said that Jaiman had provided him with a gun and had instructed him to shoot Robertson.

**B**
**The Trial**

In October and November of 1995, Jaiman went to trial before a jury; Muriel testified at the trial as the prosecutor's key witness. However, the jury was unable to achieve unanimity, and a mistrial was declared. In February 2000, Jaiman went to trial a second time. During that trial, the state again called Muriel to the stand, but this time, he refused to testify, maintaining that it was his understanding that his plea agreement required him to testify truthfully only once. When he was asked whether he had testified truthfully at the first trial, he responded, "[a]s far as I remember, I think so." Nonetheless, Muriel professed that he had no memory of Jaiman saying anything to him about Robertson, he had no memory of Jaiman giving him a gun that night, he had no memory of Jaiman telling him to shoot Robertson, and he had no memory of what he did with the gun afterward. He continued to maintain that position even after he was shown the statement he had provided to the Central Falls Police and after the state attempted to refresh his recollection by showing him a transcript of his testimony from Jaiman's first trial. He explained that his memory failure was the result of the passage of time and the stress arising from his incarceration.

As a result of Muriel's memory failure, the trial justice permitted portions of the witness's police statement to be read to the jury. Significantly, when Muriel testified that he could not remember the position of the vehicles when he started firing at the Robertson car, he was presented with his police statement in an attempt to refresh his recollection. The following portion of that statement was read to Muriel in the presence of the jury:

> "Q    Did there come a time that any of the cars turned off the
>        street? * * *
>
> "A    Answer: The shooting stopped and they turned left and we
>        turned left and they turned right, I think. Question: Before

you turned left did you shoot at the car any other time?
Answer: Yes, as [Jaiman]'s car was turning onto the street I
shot twice more. Question: Where did you go then?"

The state then moved to have the entire police statement entered into evidence as a full exhibit, and defendant objected. However, after a recess, defense counsel said that he had reached an agreement with the state and that he did not object to the introduction of the three questions that the prosecution had identified. The trial justice also allowed the introduction of additional portions of the police statement as a full exhibit as a prior inconsistent statement.

On March 3, 2000, the jury found Jaiman guilty of the first-degree murder of DeGrafft, as well as assault with intent to murder Robertson and assault with a dangerous weapon upon Zigbuo.[1] Jaiman filed a motion for a new trial, which the trial justice denied, and on March 9, 2000, he sentenced Jaiman to a mandatory term of life imprisonment for the first-degree murder and to two concurrent terms of twenty years to serve on both assault convictions.

## C
## The Direct Appeal

Jaiman timely filed a notice of appeal to this Court.[2] It is fair to say that defendant's appeal to this Court focused on the introduction of Muriel's police statement during the trial. In a decision dated June 22, 2004, this Court held that the police statement was admissible as a prior inconsistent statement, and we affirmed the conviction.[3] Jaiman, 850 A.2d at 990.

---

[1] The count for conspiracy to murder DeGrafft did not go to the jury because the trial justice granted a judgment of acquittal after the state's case. Similarly, the counts of conspiracy to assault Robertson and conspiracy to commit felony assault upon Zigbuo did not go to the jury because the state dismissed the counts.

[2] In June 2002, the case was remanded to the Superior Court for a hearing on Jaiman's motion for a new trial based upon newly discovered evidence. On September 26, 2002, the trial justice denied the motion for a new trial, and the matter was returned to this Court for oral argument.

[3] For the first time on appeal, Jaiman also argued that Muriel's statement did not qualify as a recorded recollection under Rule 803(5) of the Rhode Island Rules of Evidence, nor was it admissible as a statement against interest under Rule 804(b)(3) of the Rhode Island Rules of

**D**
**Postconviction Relief**

On December 16, 2004, Jaiman filed a pro se application for postconviction relief in the Superior Court, which was amended twice after counsel was appointed to represent him. In Jaiman's second amended application, he delineated twelve reasons to support his argument that his conviction and his sentence violated the Constitution of the United States and the Constitution and laws of Rhode Island, including that his trial attorney was ineffective because he did not object to the prosecutor's unnecessary multiple references to "truthfulness" when addressing Muriel's cooperation agreement, that his trial attorney was ineffective because he failed to request any type of cautionary instruction when the prosecutor improperly vouched for Muriel's truthfulness, and that his sentence "exceeded the maximum authorized by law and is otherwise not in accordance with the sentence authorized by law."[4]

A hearing on Jaiman's postconviction-relief application was held on August 13, 2008. During the hearing, the parties agreed to address the specific issue of whether there was merit to Jaiman's allegation that he was currently serving an illegal sentence.[5] After the parties presented their respective arguments, the trial justice concluded that counsel's argument that Jaiman was

---

Evidence. State v. Jaiman, 850 A.2d 984, 987 (R.I. 2004). He also argued that Muriel's extensive memory lapses rendered him functionally unavailable for cross-examination and, therefore, that the use and introduction into evidence of the police statement violated the Confrontation Clause of the Sixth Amendment to the United States Constitution. Jaiman, 850 A.2d at 987-88. We held that those arguments had been waived because defendant failed to raise them below.

[4] Jaiman alleged nine other grounds for postconviction relief in his application. Those claims, however, are not before this Court.

[5] Jaiman phrases this argument as an "illegal sentence." This Court has defined an illegal sentence as a sentence "that is not authorized by the statute establishing the punishment that may be imposed for the particular crime or crimes." State v. Texieira, 944 A.2d 132, 143 (R.I. 2008). Essentially, however, Jaiman has challenged the legality of his conviction by arguing that, as an aider and abettor, he cannot be convicted of a more serious offense than the principal. For consistency with the record, this Court will continue to refer to this argument as an "illegal sentence," despite the inartful phrasing of the claim.

serving an illegal sentence was "not supported either in law or in fact or frankly in policy as to the rights to plea bargain and the right of the state to seek and prosecute at levels that they choose for the defendants that are targeted for violation of the law."

Upon review of the other issues argued in defendant's brief, the trial justice concluded that he saw "no reason to convene any kind of evidentiary hearing at all claiming basically to the ineffective assistance because [trial counsel] represented the defendant and somehow sat on his hands and failed to object at certain times or permit inculpable faulty statements to come in," and "[f]rankly, the Rhode Island Supreme Court ruled on a fair amount of that already and even before closing argument that there was a decision in Jaiman reported at 850 A.2d 984." The trial justice further explained that he saw

> "nothing raised in [trial counsel's] brief * * * or delineated in [trial counsel's] memoranda * * * that any stretch of the imagination transgresses or reaches the Strickland level and I'm of the mind that to the extend [sic] that you care to have this matter reviewed by the Supreme Court, by all means take it upstairs if you like, but I see no reason to offer judgment in favor of your client in this matter."

Before he dismissed Jaiman's postconviction-relief application, the trial justice asked Jaiman's postconviction-relief counsel to explain what would be gained by inviting trial counsel to the stand to explain his reasons for objecting or not objecting to certain evidence. Jaiman's counsel responded that he believed there was merit to the allegation that the objections should have been made by trial counsel. He also argued that even if he personally did not believe there was merit to the issues in the postconviction-relief application, and if he had reported such an opinion in a Shatney memorandum, Jaiman nonetheless "has the opportunity to proceed even pro se if he still wanted to have those issues brought before the Court." See Shatney v. State, 755 A.2d 130 (R.I. 2000).

- 6 -

The trial justice responded that Shatney does not require the court to provide a hearing in every single instance for which there is a prayer for relief and, in this case, that he concluded all the issues were "ripe for determination without evidentiary hearing." Jaiman's counsel asked the trial justice to "note our exception," and requested permission to allow Jaiman to address the court. After listening to Jaiman's comments, the trial justice said that he was not persuaded, and he denied the application for postconviction relief. A formal judgment was entered, denying Jaiman's application. Jaiman timely appealed to this Court. Before this Court, Jaiman raises the following four issues on appeal of the denial of his postconviction-relief application: (1) his due process rights were violated when the prosecutor improperly vouched for Muriel's credibility, (2) his conviction for first-degree murder violated G.L. 1956 § 11-1-3,[6] (3) his trial counsel was ineffective for failing to object to the first-degree murder instruction, and (4) his trial counsel was ineffective for failing to object to the prosecutor's improper witness vouching.

## II
## Standard of Review

General Laws 1956 § 10-9.1-1 creates a postconviction remedy "available to any person who has been convicted of a crime and who thereafter alleges either that the conviction violated the applicant's constitutional rights or that the existence of newly discovered material facts requires vacation of the conviction in the interests of justice." Higham v. State, 45 A.3d 1180, 1183 (R.I. 2012) (quoting DeCiantis v. State, 24 A.3d 557, 569 (R.I. 2011)). We note that an

---

[6] General laws 1956 § 11-1-3 provides:

> "[e]very person who shall aid, assist, abet, counsel, hire, command, or procure another to commit any crime or offense, shall be proceeded against as principal or as an accessory before the fact, according to the nature of the offense committed, and upon conviction shall suffer the like punishment as the principal offender is subject to by this title."

applicant for postconviction relief must bear "the burden of proving, by a preponderance of the evidence, that [postconviction] relief is warranted" in his or her case. Anderson v. State, 45 A.3d 594, 601 (R.I. 2012) (quoting Mattatall v. State, 947 A.2d 896, 901 n.7 (R.I. 2008)). When "reviewing the denial of postconviction relief, this Court affords great deference to the hearing justice's findings of fact and will not disturb his or her ruling 'absent clear error or a showing that the [hearing] justice overlooked or misconceived material evidence.'" Higham, 45 A.3d at 1183 (quoting Brown v. State, 32 A.3d 901, 907-08 (R.I. 2011)).

When evaluating allegations of ineffective assistance of counsel, the standard employed by this Court is identical to that set forth by the Supreme Court of the United States in Strickland v. Washington, 466 U.S. 668 (1984). "Applicants are required to demonstrate that: (1) 'counsel's performance was deficient' in that it fell below an objective standard of reasonableness, * * * and (2) 'that such deficient performance was so prejudicial to the defense and the errors were so serious as to amount to a deprivation of the applicant's right to a fair trial.'" Tassone v. State, 42 A.3d 1277, 1284-85 (R.I. 2012) (quoting Lynch v. State, 13 A.3d 603, 605-06 (R.I. 2011) and Bustamante v. Wall, 866 A.2d 516, 522 (R.I. 2005)).

When determining whether opinion testimony is inadmissible "bolstering" or "vouching," this Court considers if "the opinion testimony has the same substantive import as if it squarely addressed and bolstered another witness's credibility * * *." State v. Rushlow, 32 A.3d 892, 899 (R.I. 2011) (quoting State v. Adefusika, 989 A.2d 467, 476 (R.I. 2010)). "When this Court determines that specific testimony constitutes impermissible bolstering, our task is then to determine whether the trial justice's decision to admit such improper testimony constituted prejudicial error." Id. (citing Adefusika, 989 A.2d at 476).

Finally, under Rule 35(a) of the Superior Court Rules of Criminal Procedure, "[t]he court may correct an illegal sentence at any time." See State v. Linde, 965 A.2d 415, 416 (R.I. 2009). "A ruling on a motion to correct sentence is committed to the sound discretion of the hearing justice, and his or her decision will normally be disturbed 'only when the sentence is without justification.'" State v. Bouffard, 35 A.3d 909, 916 (R.I. 2012) (quoting Curtis v. State, 996 A.2d 601, 604 (R.I. 2010)). Our review of such a ruling is limited, "particularly in light of our 'strong policy against interfering with a trial justice's discretion in sentencing matters.'" Id. (quoting State v. Mendoza, 958 A.2d 1159, 1161 (R.I. 2008). "When faced with the interpretation of statutes and court rules upon review of a Rule 35 motion, however, we apply a de novo standard." Id. (citing State v. Goncalves, 941 A.2d 842, 847 (R.I. 2008)).

# III
# Analysis

## A
## Vouching as Due-Process Violation

Jaiman asserts that his due-process right to be tried only on evidence properly admitted before the jury was violated because, he argues, the state wrongly vouched for Muriel's credibility. The state responds that Muriel's credibility was an issue addressed on direct and cross-examination, and the prosecutor's statement during closing argument merely rebutted the defense counsel's statements.

Section 10-9.1-8, entitled "[w]aiver of or failure to assert claims," provides in pertinent part:

> "Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds that in the interest of

> justice the applicant should be permitted to assert such a ground for relief."

This Court has held that § 10-9.1-8 "codifies the doctrine of res judicata as applied to petitions for post-conviction relief." State v. DeCiantis, 813 A.2d 986, 993 (R.I. 2003). Res judicata bars the relitigation of any issue that could have been litigated in a prior proceeding, including a direct appeal, that resulted in a final judgment between the same parties or those in privity with them. See Carillo v. Moran, 463 A.2d 178, 182 (R.I. 1983); see also Ouimette v. State, 785 A.2d 1132, 1138 (R.I. 2001) (enumerating the elements of res judicata as: "(1) identity of the parties; (2) identity of the issues; (3) identity of the claims for relief; and (4) finality of the judgment").

In this case, Jaiman could have, but did not, raise his due-process claim in the direct appeal of his conviction, which focused solely on the admissibility of Muriel's out-of-court statements. Jaiman, 850 A.2d at 987. We hold, therefore, that Jaiman's postconviction challenge is barred by the doctrine of res judicata. Accordingly, we will not consider it.

## B
## Illegal Sentence

Jaiman also maintains that § 11-1-3 should be interpreted to require that an aider and abettor cannot be convicted of and punished for a more serious offense than the principal, and in this case, because the shooter, Muriel, was convicted of second-degree murder, Jaiman's conviction for the more serious offense of first-degree murder was improper. Jaiman relies on what he argues is the plain and ordinary meaning of § 11-1-3, as well as the rule of lenity, to support his interpretation. The state, however, argues that res judicata bars Jaiman's substantive claim under § 11-1-3. If further contends that even if the claim is not precluded, the plain and unambiguous language of § 11-1-3 does not limit the potential that an aider and abettor will be convicted of an offense that is the same as or less than that of the principal. The state also argues

that the rule of lenity should not apply because § 11-1-3 is unambiguous and not susceptible to more than one reasonable interpretation.

Before addressing the merits of defendant's argument, we first will consider whether the issue is properly before this Court on appeal. Section 10-9.1-8 provides a procedural bar to "the relitigation of any issue that could have been litigated in a prior proceeding, even if the particular issue was not raised." Tassone, 42 A.3d at 1284 n.7 (quoting Ouimette, 785 A.2d at 1138). In our opinion, Jaiman's argument that he suffered the imposition of an illegal sentence should have been raised on direct appeal. However, our reading of the record reveals that Jaiman's attorney and the state agreed to address this issue at the postconviction-relief hearing and that the trial justice considered the arguments of each party and rendered a decision. Accordingly, because the issue was raised before the trial justice and ruled upon by him, this Court will not deem the argument waived and will address it. Cf. State v. Bido, 941 A.2d 822, 828-29 (R.I. 2008) ("It is well settled that a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court.").

"This Court reviews questions of statutory interpretation in a de novo manner." State v. Graff, 17 A.3d 1005, 1010 (R.I. 2011). In our approach to this interpretive task, we are mindful that "our ultimate goal is to give effect to the General Assembly's intent." Martone v. Johnston School Committee, 824 A.2d 426, 431 (R.I. 2003). We have stated, however, that "[t]he plain statutory language is the best indicator of legislative intent." State v. Santos, 870 A.2d 1029, 1032 (R.I. 2005). And, we have indicated that "a clear and unambiguous statute will be literally construed." Martone, 824 A.2d at 431. Accordingly, "[w]hen the language of a statute is clear and unambiguous, we must enforce the statute as written by giving the words of the statute their plain and ordinary meaning." Graff, 17 A.3d at 1010 (quoting Harvard Pilgrim Health Care of

New England, Inc. v. Gelati, 865 A.2d 1028, 1037 (R.I. 2004)). "It is only when confronted with an unclear or ambiguous statutory provision that this Court will examine the statute in its entirety to discern the legislative intent and purpose behind the provision." In re Harrison, 992 A.2d 990, 994 (R.I. 2010) (quoting State v. LaRoche, 925 A.2d 885, 888 (R.I. 2007)).

We have not had the opportunity to squarely address the issue raised by defendant, i.e., whether an aider and abettor can be convicted of a more serious offense or suffer a greater penalty than the principal. In construing the language of § 11-1-3, however, it is our opinion that the plain and unambiguous language requires the interpretation that the question shall be answered in the affirmative.

Section 11-1-3 provides that "[e]very person who shall aid, assist, abet, counsel, hire, command, or procure another to commit any crime or offense, shall be proceeded against as principal or as an accessory before the fact." (Emphasis added.) The plain language of this portion of § 11-1-3 explicitly provides that where, as here, defendant aided and abetted in the crime and was present when it was committed, it is not improper to convict and punish him as a principal. Indeed, in the past, we have recognized that "one need not have actually 'pulled the trigger' in order to have committed first degree murder." State v. Diaz, 654 A.2d 1195, 1201 (R.I. 1995). Whether a defendant is charged as a principal or as an aider or abettor, "all who participate in a crime are severally responsible as principals, as though each had committed the offense alone." Id. at 1202 (quoting State v. Medeiros, 535 A.2d 766, 772 (R.I. 1987)).

In this case, the evidence demonstrated to a jury's satisfaction that Jaiman assisted Muriel in the murder and that Jaiman was present at the scene. Accordingly, Jaiman properly was convicted of murder. As we recognized previously, a "defendant's manner of participation, whether as a principal or [as] an aider or abettor, is not an element of the crime." State v. Davis,

877 A.2d 642, 648 (R.I. 2005) (emphasis added).  The prosecution is not required to "persuade a unanimous jury beyond a reasonable doubt" with respect to the manner in which a defendant participated in a crime.[7]  Id.  This is significant because, in Rhode Island, there is no distinction between one who pulls the trigger and those associated with him or her; all parties involved in the crime are equally guilty of the completed offense.  See 21 Am. Jur. 2d Criminal Law § 163 at 275 (2008).  Thus, the plain and unambiguous language of § 11-1-3 makes clear that the statute merely provides an alternative theory under which liability for the underlying substantive crime may be proven.

Section 11-1-3 also provides that "upon conviction[, the aider and abettor] shall suffer the like punishment as the principal offender."  Here, both Muriel and Jaiman were subject to punishment for murder.  The indictments charging Jaiman and Muriel did not include the specific degree of murder for which they were charged, and both could have been convicted of either first-degree murder or second-degree murder.  Although Muriel pled to the lesser included offense of second-degree murder, this does not negate the fact that he was subject to a first-degree murder charge.  It was only because of Muriel's intervening plea bargain that Jaiman and Muriel were not similarly situated.  Nothing in the statute or in the prior holdings of this Court tethers one defendant's conviction and sentence to the criminal liability of another who participated in the same crime.  Consequently, it is our firm opinion that Jaiman was properly charged and convicted of first-degree murder.

Our holding is consistent with the manner in which other jurisdictions have interpreted similar accomplice liability statutes.  For example, the United States Supreme Court, which

---

[7] Our holding in Davis was based on the pertinent statutory language of § 11-1-3, which "eliminates the legal distinction between [1] the commission of a crime as a principal and [2] aiding and abetting another in the commission of a crime."  State v. Davis, 877 A.2d 642, 648 (R.I. 2005).

interpreted a similar federal statute, decided that an aider and abettor could be convicted even when the principal has been acquitted. See Standefer v. United States, 447 U.S. 10, 11, 19 (1980). In that case, after a revenue official was acquitted of accepting unlawful payments, Standefer moved to dismiss the charges against him, arguing, on principles of collateral estoppel, that because the principal was acquitted, he could not be convicted of aiding and abetting that principal. Id. at 11-13. In rejecting that argument, the Supreme Court traced the origins of aiding and abetting and found that there was "a clear intent to permit the conviction of accessories to federal criminal offenses despite the prior acquittal of the actual perpetrator of the offense." Id. at 19. Further, with the enactment of 18 U.S.C. § 2,[8] which was the statute at issue, all participants in conduct violating a federal criminal statute were considered "principals" and were punishable for their criminal conduct; the fate of other participants was irrelevant. Finally, the Court noted that collateral estoppel would not bar the accomplice's trial because through lenity, compromise, or mistake, the jury might have reached an irrational result in the prior trial, which was not subject to review at the government's instigation. Standefer, 447 U.S. at 21-23.

In addition, many commentators have concluded that there is no conceptual obstacle to convicting a secondary party of a more serious offense than is proved against the primary party. See Joshua Dressler, Understanding Criminal Law § 30.06[C] at 450 (2d ed. 1997). This concept relates to homicide as follows:

> "An accomplice may be convicted of first-degree murder, even
> though the primary party is convicted of second-degree murder or

---

[8] The full text of 18 U.S.C. § 2, entitled "[p]rincipals," provides:

> " (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
> " (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

- 14 -

of voluntary manslaughter. This outcome follows, for example, if the secondary party, premeditatedly, soberly and calmly, assists in a homicide, while the primary party kills unpremeditatedly, drunkenly, or in provocation. Likewise, it is possible for a primary party negligently to kill another (and, thus, be guilty of involuntary manslaughter), while the secondary party is guilty of murder, because he encouraged the primary actor's negligent conduct, with the intent that it result in the victim's death." Id.

Accordingly, the plain language of § 11-1-3, supported by our previous interpretation of aider and abettor liability and the history discussed in Standefer, rebuts Jaiman's contention that the statute was not intended to authorize the conviction of an aider and abettor of a greater offense than the principal. Although "symmetry of results may be intellectually satisfying, it is not required." Standefer, 447 U.S. at 25; see Farnsworth v. Zerbst, 98 F.2d 541, 544 (5th Cir. 1938) ("One may die, may escape, or obtain a pardon; but the other remains guilty."). An aider and abettor's conviction or sentence should not be reformed because the principal was acquitted or convicted of a different offense or degree of offense. To hold otherwise would capriciously condition a party's conviction and sentence on the jury's decision in another criminal case. Therefore, this Court finds that Jaiman's conviction was proper based on the plain and ordinary meaning of § 11-1-3.[9]

## C
## Ineffective Assistance of Counsel

### 1
### Severity of Punishment

Jaiman argues that his trial counsel's failure to object to the first-degree murder instruction constitutes ineffective assistance of counsel. The state, however, argues that although

---

[9] We acknowledge Jaiman's argument concerning the rule of lenity; however, the rule of lenity does not apply to this case because there is only one reasonable interpretation of § 11-1-3. The rule of lenity is merely a principal of statutory construction; it is inapplicable when the legislative intent is clear. Guerro v. Fitzpatrick, 436 F.2d 378, 380 (1st Cir. 1971) (citing Milanovich v. United States, 365 U.S. 551, 554 (1961)).

Jaiman raised a substantive challenge to the interpretation of § 11-1-3 in his application for postconviction relief, he did not bring an ineffective assistance of counsel claim, and it is therefore waived. The state alternatively contends that even if Jaiman did not waive this contention, Jaiman's allegation that an aider and abettor cannot be convicted of a greater offense than the principal is a novel theory in Rhode Island, upon which a claim for ineffective assistance of counsel may not be founded.

Our holding that an aider and abettor may, indeed, be convicted of a more serious offense than the principal, however, makes any further discussion of this issue unnecessary. In other words, the conviction was proper, and trial counsel's failure to object cannot constitute ineffective assistance of counsel. Counsel cannot be faulted for failing to raise a meritless objection.

**2**
**Failure to Object to Improper Vouching or to Request Cautionary Instructions**

Finally, Jaiman contends that his trial counsel's failure to object to what he argues was improper vouching for Muriel's truthfulness during the state's closing argument and failure to request a cautionary jury instruction regarding that comment constitutes ineffective assistance of counsel. During his closing argument to the jury, the prosecutor said, "[b]ut the reality is that [Muriel] wasn't going to get the deal that he wanted to make with the State of Rhode Island unless the State of Rhode Island was convinced he was telling the truth."

The state argues that, while the prosecutor referred to the plea bargain, in no way did the state insinuate that it had special knowledge about Muriel's truthfulness; the prosecutor merely rebutted defendant's impeachment of Muriel's credibility. The state also argues that, even if the statement was improper, not objecting to it may have been a tactical decision by counsel to prevent any further attention being drawn to Muriel's credibility. Finally, the state maintains that

the trial justice gave appropriate, general instructions about the arguments and statements by both trial counsel to prevent the jurors from placing undue emphasis on any personal opinions expressed by counsel during closing argument.

We have held that "[a] prosecutor is 'allowed considerable latitude in [closing] argument[s] * * * as long as [he or she] stays within the evidence and * * * legitimate inferences * * *.'" State v. Werner, 851 A.2d 1093, 1107 (R.I. 2004) (quoting State v. Harding, 740 A.2d 1270, 1274 (R.I. 1999)). However, we also have said that "[i]t is improper for the prosecution to vouch for the credibility of a government witness." State v. Chakouian, 537 A.2d 409, 412 (R.I. 1988) (quoting United States v. Roberts, 618 F.2d 530, 533 (9th Cir. 1980)). In Chakouian, this Court explained that "[o]ne means through which improper vouching may occur is by admission of plea agreements phrased in a manner that suggests that the government has special knowledge that its witness is speaking the truth." Id. Improper vouching can also occur "if the prosecution 'place[s] the prestige of the government behind the witness * * *.'" Id. (quoting Roberts, 618 F.2d at 533)).

It is not enough, however, for a defendant on appeal to assert that the prosecutor assured the jury that a witness's testimony was credible. The defendant must be able to identify, as the basis for that comment, an explicit or implicit reference to either the personal knowledge of the prosecuting attorney or information not contained in the record. See Lawn v. United States, 355 U.S. 339, 359-60 n.15 (1958). More specifically, with regard to cooperation agreements, this Court has expressly said that "the mere statement in the cooperation agreement that [an individual] would testify truthfully coupled with [his or] her acknowledgement that [he or] she could be charged with perjury if [he or] she failed to do so does not constitute impermissible vouching and certainly does not require reversal." State v. Diefenderfer, 970 A.2d 12, 34 (R.I.

2009); see United States v. Dockray, 943 F.2d 152, 156 (1st Cir. 1991) ("It is not error to inform a jury of the contents of a plea agreement, nor is it improper for the government to call attention to a witness'[s] motivation for testifying.").

In this case, Muriel was a recalcitrant witness who claimed that he remembered little or nothing about the crime at issue or his earlier statements about what had occurred. As a result, both sides liberally attacked his credibility. During his closing argument, the prosecutor referred to Muriel's promise to speak truthfully. The specific statement that Jaiman challenges is the prosecutor's remark that Muriel "wasn't going to get the deal that he wanted to make with the State of Rhode Island unless the State of Rhode Island was convinced he was telling the truth." Trial counsel did not object to that comment. Arguably, that comment could be construed as improper vouching and implying special knowledge on the part of the state as to Muriel's truthfulness. See Brown v. State, 964 A.2d 516, 528 (R.I. 2009). Compare Lawn, 355 U.S. at 359-60 n.15 (holding that prosecutor's statement, "[w]e vouch for [Roth and Lubben] because we think they are telling the truth," was not improper because he "did not say nor insinuate that the statement was based on personal knowledge or on anything other than the testimony of those witnesses given before the jury"), and Dockray, 943 F.2d at 156 ("It is not error to inform a jury of the contents of a plea agreement, nor is it improper for the government to call attention to a witness'[s] motivation for testifying."), with Gradsky v. United States, 373 F.2d 706, 709-10 (5th Cir. 1967) (holding that it was improper for prosecutor to state "when we offer a witness we have to vouch for his credibility * * * the government representatives don't put a witness on the stand unless there appears to be some credibility * * * [c]ertainly, the government has every opportunity to check out and to judge the credibility and truthfulness") (emphasis omitted).

Assuming without deciding that the prosecutor's statement was objectionable, and further assuming that an objection raised to it would have precipitated a cautionary instruction from the trial justice, it is nonetheless our opinion that trial counsel's failure to object to that single statement, in a record of several hundred pages, was not constitutionally deficient or that it could have so prejudiced Jaiman that it rendered the verdict in his trial unreliable. See Strickland, 466 U.S. at 687 (setting forth the two-prong test of whether counsel's actions were objectively unreasonable and that prejudice results to establish ineffective assistance of counsel); Simpson v. State, 769 A.2d 1257, 1266 (R.I. 2001) (discussing Strickland). First, trial counsel's failure to object to the prosecutor's statements about Muriel's credibility cannot be said to have been objectively unreasonable. Judicial scrutiny of counsel's performance must be highly deferential. In Strickland, 466 U.S. at 689, the Court cautioned a defendant against "second-guess[ing] counsel's assistance after conviction or adverse sentence." Further, "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. A fair assessment of counsel's performance, therefore, "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.

Recognizing the difficulties inherent in making such an evaluation, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). In any given case, "[t]here are countless ways to provide effective assistance * * *[;] [e]ven the best criminal defense

attorneys would not defend a particular client in the same way." Id.; cf. Engle v. Isaac, 456 U.S. 107, 133-34 (1982) (holding that the Constitution guarantees criminal defendants only a fair trial and a competent attorney; it does not ensure that the defense will recognize and raise every possible claim). In light of the high degree of deference that the courts should employ when evaluating counsel's performance, Jaiman has not established that trial counsel's failure to object or his failure to request a cautionary instruction was objectively unreasonable. See Washington v. State, 989 A.2d 94, 99 (R.I. 2010); see also Strickland, 466 U.S. at 689.

Moreover, even if Jaiman had somehow satisfied the first prong of Strickland, we are convinced that he has not demonstrated the existence of any prejudice suffered as a result of the prosecutor's statement concerning Muriel's credibility. As previously discussed, in addition to failing to show that trial counsel's performance was deficient, this Court also must find that trial counsel's performance was so serious as to deprive defendant of a fair trial and therefore prejudiced the defense. See Strickland 466 U.S. at 687.

In this case, we are not satisfied that the prosecutor's one reference in his closing argument was incurably prejudicial or that it demanded a declaration of mistrial. This one snippet is not so egregious that it should have caused a mistrial. Moreover, the trial justice cautioned the jurors that statements of counsel during the trial or in final argument are not evidence and are not to be considered by the jurors as evidence during their deliberations. See State v. Hak, 963 A.2d 921, 930 (R.I. 2009) (holding that comments were not prejudicial when the trial justice instructed the jury that it alone was to judge credibility and that statements by attorneys during closing arguments were not evidence). Specifically, the trial justice instructed, "statements of lawyer[s], either to you in their opening statement or in their closing argument or whatever way they frame the question, those statements and arguments are not evidence." In

addition, immediately before closing arguments, the trial justice explained that "what a lawyer say[s] is not evidence." See State v. Fortes, 922 A.2d 143, 151 (R.I. 2007) ("in light of the clear instructions given by the trial justice," the prosecutor's comment during closing argument "was not unfairly prejudicial").  Accordingly, we hold that trial counsel's failure to object did not prejudice Jaiman or undermine the validity of the trial and the verdict reached.

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.



**TITLE OF CASE:**        State v. Hector Jaiman.

**CASE NO:**        No. 2009-147-Appeal.
(PM 05-55)

**COURT:**        Supreme Court

**DATE OPINION FILED:**  November 16, 2012

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**        Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Robert D. Krause

**ATTORNEYS ON APPEAL:**

For Applicant:   Janice M. Weisfeld
Office of the Public Defender

For State:   Aaron L. Weisman
Department of Attorney General

Lee Hiromoto
Rule 9 Student