384 A.2d 298.

BRISTOL AND WARREN GAS COMPANY *vs.*
WILLIAM W. HARSCH *et al.*

SOUTH COUNTY GAS COMPANY *vs.*
WILLIAM W. HARSCH *et al.*

MARCH 20, 1978.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J.   Bristol and Warren Gas Company (Bristol) and South County Gas Company (South County) have brought these two petitions for certiorari pursuant to G.L. 1956 (1977 Reenactment) §39-5-1. The respondents are the Public Utilities Commission (the commission) and its individual members.

We granted the two petitions to review orders of the commission denying petitioners increases in certain rates they charge for supplying gas. The petitioners contend that the orders are invalid because the commission did not hold public hearings first as required by §39-3-11.[1] By agreement of the parties the two petitions have been consolidated, and the petitioners will sometimes be referred to jointly as "the companies" or "the utilities."

---

[1]General Laws 1956 (1977 Reenactment) §39-3-11 reads in part as follows:

"Notice of change in rates — Suspension of change — Hearings. — No change shall be made in the rates, tolls and charges which have been filed and published by any public utility in compliance with the requirements of §39-3-10, except after thirty (30) days' notice to the commission and to the public published as aforesaid, which shall plainly state the changes proposed to be made in the schedule then in force, and the time when the changed rates, tolls or charges will go into effect. Whenever the commission receives such notice of any change or changes proposed to be made in any schedule filed under the provisions of §39-3-10, the commission shall hold a public hearing and make investigation as to the propriety of such proposed change or changes. After notice of any such investigation, the commission shall have power by any order served upon the public utility affected to suspend the taking effect of such change or changes pending the decision thereof, but not for a longer period than six (6) months beyond the time when such change or changes would otherwise take effect; provided, however, that in the event that any such hearing and/or investigation shall not have been completed at the expiration of said six (6) month period, the commission shall have power by an order served upon the public utility affected to further suspend the taking effect of such change or changes pending the decision thereon, but not for a longer period than three (3) months beyond the expiration of the first mentioned six (6) month period. Each such hearing and investigation shall be conducted as expeditiously as may be practicable, and with a minimum of delay. Within ninety (90) days after the completion of any such hearing, the commission shall make such order in reference to any proposed rate, toll or charge as may be proper."

On November 29, 1976, Bristol filed with the commission four new rates designed to provide 11 to 12 percent more revenue than the tariffs already in effect. The new rates were to become effective on January 1, 1977, but on December 30, 1976, the commission, without holding any public hearings, denied these tariff requests.

On December 9, 1976, South County filed two new rates designed to yield about 20 percent more revenue than the rates they were then charging. South County proposed to put these tariffs into effect on January 10, 1977. The commission suspended that effective date, as allowed by statute, pending hearings on the new tariffs. Section 39-3-11.[2] On January 13, 1977, however, again without holding any hearings, the commission entered an order denying these tariff requests.

In denying the tariffs proposed by both companies, the commission noted that in orders dated May 5, 1976, it had rejected previous tariffs filed by these companies because the account books of each company at that time "contained gross irregularities in the accounting treatment afforded many expenses, and were in such a state that they could not be readily be relied upon to ascertain with any assurance the actual financial condition of the Company and its need, if any, for rate relief." The commission noted that in those same orders it had directed the companies to retain independent accountants approved by the Division of Public Utilities and Carriers (the division), to reconstruct their books completely under the division's supervision, and to establish procedures for insuring future compliance with the Uniform System of Accounts for all their accounting transactions.

---

[2]As of July 1, 1978, this suspension period will be reduced to 5 months. Public Laws 1977, ch. 236, §§2, 3.

The Commission then quoted from those May 1976 orders where it had stated:

" 'This Commission will not entertain another rate increase request by either of these companies until this reconstruction [of the books] has been completed to the full satisfaction of the Division.' "

The commission based its denial of the present tariff requests on this last provision of the May 1976 orders. It acknowledged that the companies had made some progress in reforming their accounts as the commission had ordered, but it noted specifically that neither company had completed the required audit of its books. The commission thus stated that "[u]ntil the audit is completed ... we are constrained to follow the letter of our previous order," and it entered the orders before us now in which it "denied, dismissed, and rejected" the rate requests "without prejudice to [each] Company's right to renew its filing at such time that it has brought itself into full compliance with the Commission's [earliest order]."

In seeking review of these latest orders, the companies have not questioned the commission's authority to order a utility to clean up its books of account. Nor have they alleged that the commission erred in its finding that they had not complied with the orders to do so.[3] Rather, the companies' sole contention is that under §39-3-11 the commission is required to hold public hearings before acting on any

---

[3]Although the companies do not rely on their claim of compliance with the reform orders of May 1976, they did allege such compliance in their presentation to the commission. Prepared testimony of Richard A. Sullivan, president of both companies, was submitted with the tariff proposals of Bristol and Warren Gas Company and included the following:

"Q. Did the Company request an increase in rates in 1975?

"A. Yes. But the Commission rejected the rate increase on the grounds that the books of the Company were not in conformance with NARUC Uniform System of Accounts, and directed that an independent accountant be retained to so conform the books.

proposed tariffs and that since it failed to do so here, it acted outside of its statutory authority, so that its orders denying the tariffs had no legal effect. The utilities thus conclude that they are now entitled to charge those rates not only for the future but also retroactively to their legally effective dates.

By focusing their argument as they do solely on the language of §39-3-11, however, the utilities fail to take full cognizance of both the overall course of these proceedings and the other provisions of the public utilities statute.

In May 1976, months before the present orders were entered, the commission had informed the companies of its determination that their books of account did not provide the evidence necessary to support their requests for rate relief[4] and had defined specific measures, among them an audit, which it considered necessary for the companies to take before their books could support such requests. The companies never sought review of those orders,[5] and, when they filed the present tariffs later in 1976, they impliedly recognized an obligation to comply with the commission's standards.[6] Nonetheless, the prepared testimony submitted

---

"Q. Has this been done?

"A. Yes. An independent accountant has compiled a test year Income Statement for the twelve months ending June 30, 1976 in conformity with NARUC Uniform System of Accounts and prepared a Balance Sheet as of June 30, 1976. Exhibit 2 is a Comparative Balance Sheet as of June 30, 1975, December 31, 1975 and June 30, 1976. Exhibit 3 is the Income Statement for the year ending June 30, 1976."

The testimony submitted with the South County Gas Company's tariffs was virtually identical, differing only in the numeration of the exhibits.

[4]By statute, public utilities have the burden of proving that proposed rate increases are necessary in order for the utilities to obtain reasonable compensation for for services rendered. General Laws 1956 (1977 Reenactment) §39-3-12.

[5]In their briefs, the respondents indicate that the companies did file for certiorari to review the May 1976 orders but that they discontinued those petitions.

[6]See the testimony of Richard A. Sullivan in note 3.

with these latest tariff requests indicated only partial compliance with those standards, and that testimony contained nothing to indicate that the audits had been carried out.[7]

We believe the commission acted within its authority when it entered the May 1976 orders. As respondents point out, in §39-1-38 the Legislature grants to the commission, in addition to those powers specifically enumerated, "all additional, implied and incidental power which may be proper or necessary to effectuate [its] purposes." That provision would be rendered virtually meaningless were we to hold that it is not broad enough to authorize the commission to act as it did here in requiring utilities to present acceptable books of account as evidence and in setting specific standards to be met before those books will be deemed acceptable. This power to set standards and to enforce them is certainly "necessary" for the commission to carry out properly its mandate under §39-1-1 to supervise and regulate public utilities in order to protect the public, as well as the utilities, against improper and unreasonable rates.

Initially, then, we conclude that the commission had the authority to take the action it did and that, as appellate review of the May 1976 orders was never sought, the companies were bound to comply with them before expecting action on any proposed tariffs.

As mentioned above, however, the record indicates that when the companies filed the present tariff requests, they failed to make any showing of full compliance with those orders. In particular, the companies did not even allege in their submitted testimony that the required audits had been carried out. Thus, from the face of the material submitted to it, the commission could determine that the companies were unable to satisy the threshold requirements for making

---

[7]See note 3.

their books acceptable which the commission had set in May 1976.

Under these circumstances the companies cannot rely on the provisions of §39-3-11. After considering that section within the overall context of the public utilities statute, we do not read it as requiring public hearings here where such hearings would be empty formalities convened merely to deny tariff requests which, on their face, are without acceptable supporting evidence.[8]

The petition for certiorari in each of these cases is denied and dismissed, the writs heretofore issued are quashed, and the records of each case certified to us are returned to the commission with our decision endorsed on them.

*Coffey, McGovern, Noel and Novogroski, John G. Coffey, Jr.,* for petitioners.

*Julius C. Michaelson,* Attorney General, *John R. McDermott,* Special Assistant Attorney General, for respondent.

---

[8]Of course if the companies had actually presented prima facie evidence of compliance with the May 1976 orders and the commission had still found noncompliance, then these cases might have been properly brought before us. In that situation a material question of fact would have been presented and the commission's determination of that question would have been reviewable here on certiorari.