Justice Robinson, for the Court.
The Town of Portsmouth (the Town) petitioned this Court for issuance of a writ of certiorari, seeking review of a June 2, 2017 Report and Order of the Rhode Island Public Utilities Commission (the PUC). On June 16, 2017, this Court issued the requested writ of certiorari. The Town contends before this Court that the PUC erred in denying its request for a discounted rate for ferry service from the Town of Bristol to Prudence Island[1] for "municipal vehicles and passengers performing essential government services;" it posits that the PUC's "express statutory authority and implied powers grant it * * * the right to order such rates without needing the permission of the entity it regulates."
This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After a close review of the record and careful consideration of the parties' arguments (both written and oral), we are satisfied that cause has not been shown and that this case may be decided at this time.
For the reasons set forth in this opinion, we affirm the Report and Order of the Public Utilities Commission.
I
Facts and Travel
The facts in this case are not in dispute, and we are concerned solely with construing G.L. 1956 § 39-2-5(2),[2] which constitutes *535 a pure question of law. In relating the pertinent facts, we rely primarily upon the June 2, 2017 Report and Order of the PUC at issue in this case as well as other documents contained in the record before us.
A & R Marine Corp., d/b/a Prudence & Bay Islands Transport (A & R Marine), runs the ferry service that operates between the Town of Bristol and Prudence Island, which is in the Town of Portsmouth. On November 6, 2015, A & R Marine filed with the PUC a request to increase its revenues by 96.5 percent. That request was A & R Marine's first request for a rate change since taking over the ferry service to Prudence Island in September of 2014. On December 11, 2015, the Town filed a motion to intervene, which was not opposed and became effective on December 21, 2015. Before the PUC, the Town requested discounted ferry rates for municipal vehicles and passengers performing essential governmental services. On March 2, 2016, the Town filed testimony from Richard Rainer, the Town Administrator, in which he stated that the Town was "requesting a discount for municipal employees and vehicles using the ferry for essential governmental services that would maintain the rates currently charged to the Town for such passengers and vehicles" in order to "ensure that such municipal services continue to benefit island residents and businesses."
A & R Marine moved to dismiss the Town's request for a discounted rate, and the Town objected. After two public comment sessions concerning the rate changes proposed by A & R Marine, an evidentiary hearing was conducted on May 10, 2016. The PUC began that hearing by entertaining oral argument on A & R Marine's motion to dismiss the Town's request for a discounted ferry rate.
In that oral argument, A & R Marine relied upon § 39-2-5(2) in contending that "because A & R [Marine] ha[d] not proposed any discounted rates for the town, and because the Division ha[d] not approved any discounted rates for the town, * * * the [PUC could not], as a matter of law, consider the town's request for such a discount * * *."[3] For its part, *536 the Town contended that the PUC was endowed with "the power and authority to supervise, regulate and make orders governing the conduct of companies offering intrastate transportation services to the public" and, as such, was authorized to consider the Town's request for a discounted rate. (Internal quotation marks omitted.)
The Division of Public Utilities and Carriers (the Division) then stated at the hearing that it had not "contemplated or included in its case for the hearing" the issue of a rate discount for the Town and it was "not prepared to speak * * * to whether it's just and reasonable or in the interest of the public." The Division acknowledged that a discounted rate for the Town had "continuously been * * * referenced" but had not been "incorporated * * * into [the Division's] analysis." The Division added that A & R Marine had never proposed the granting of a discounted rate for the Town. Subsequently, one PUC commissioner opined that the statute at issue, § 39-2-5(2), did not give the PUC the "authority to grant the [T]own's request for a discounted rate" because A & R Marine had not proposed a discounted rate for the Town, and no approval had been given by the Division. A second commissioner agreed. The PUC chairperson moved that the Town's request for a discounted rate be denied. The motion was seconded and unanimously agreed to by the commissioners.
In the course of their arguments before the PUC, and in their filings before this Court, the parties make reference to a Report and Order issued by the PUC on July 16, 1993 in Docket No. 2090, In re: Prudence Ferry, Incorporated, Application to Change Rate Schedules (the 1993 Order). In that case, the entity called "Prudence Ferry, Incorporated" (PFI) had filed an application with the PUC to increase the rate which it was charging for ferry service linking the Town of Bristol with Hog Island and Prudence Island. PFI had provided said ferry service immediately before A & R Marine had begun providing such service. The pertinent portion of the 1993 Order states as follows:
"The town of Portsmouth has requested that the [PUC] require PFI to charge a discounted rate for * * * town of Portsmouth equipment and employees.
"As a general proposition, the [PUC] may not approve discriminatory rates for special ratepayer classes ( R.I.G.L. Section 39-1-1-(3)(b) ). Exceptions to this axiom do exist, however, under Rhode Island General Laws, Section 39-2-5. Further, * * * municipalities do qualify as valid exceptions. There is one major criterion, the utility must propose the discount rate for the exempted rate class(es) before the [PUC] can consider its propriety. The [PUC] is without authority to unilaterally mandate such discounts. In the instant case no such proposal has been proffered. This fact leaves the [PUC] powerless to act on Portsmouth's requests."
In the PUC's June 2, 2017 Report and Order in the instant case, the PUC expressed its understanding that, in the 1993 Order, it had held that § 39-2-5(2) required that the public utility propose the discounted rate and that the Division determine "whether the proposal would be just and reasonable, be required to meet the interests of the public, and not be unjustly discriminatory." The PUC noted that neither prerequisite had been met in *537 the instant case. The PUC proceeded to elaborate on the fact that the Town was contending that the PUC's decision in the 1993 Order was "flawed" and that there should be no requirement that a rate discount for the Town be proposed by the public utility in the instant case (i.e. , A & R Marine). The PUC went on to point out that "the Division had not performed an analysis of whether the rate would fall within the parameters of the statute's exception to the anti-discrimination provisions [and the Town had not] presented a witness in support of its position through a cost of service study." The PUC concluded its decision with respect to the Town's request for a discounted ferry rate by stating as follows:
"In its next general rate filing, A & R Marine shall file a full allocated cost of service study and at that time, may consider whether to propose a special municipal rate. If at that time, [the Town] wishes to seek a municipal rate, it should be prepared to present expert evidence supporting such a proposal. The Division will then be in a better position to analyze any municipal-rate proposal under the parameters of the anti-discrimination provision. Should A & R Marine choose not to offer a municipal rate in its next rate case, [the Town] makes its case for one, and the Division approves it, it will then be up to the PUC to determine whether [A & R Marine's] failure to offer any municipal rate alone is an absolute bar to the PUC adopting a municipal rate."
The Town subsequently petitioned this Court for the issuance of a statutory writ of certiorari.[4]
II
Standard of Review
With respect to the factual findings of the PUC which are being reviewed by this Court, G.L. 1956 § 39-5-3 provides as follows:
"The findings of the [PUC] on questions of fact shall be held to be prima facie true, and as found by the [PUC] and the supreme court, shall not exercise its independent judgment nor weigh conflicting evidence. An order or judgment of the [PUC] made in the exercise of administrative discretion shall not be reversed unless the [PUC] exceeded its authority or acted illegally, arbitrarily, or unreasonably."
Indeed, we have gone so far as to state that "this Court's deference to the [PUC's] factual findings is all but absolute." In re Proposed Town of New Shoreham Project , 25 A.3d 482, 504 (R.I. 2011). We have further opined that "this Court reviews judgments and orders of the [PUC] solely to determine whether the [PUC's] findings are lawful and reasonable, fairly and substantially supported by legal evidence, and sufficiently specific to enable us to ascertain if the evidence upon which the [PUC] based its findings reasonably supports the result." Narragansett Electric Co. v. Public Utilities Commission , 773 A.2d 237, 240 (R.I. 2001) (internal quotation marks omitted).
However, we have stated on numerous occasions that "pure questions of law, including statutory interpretations, decided by the [PUC] are reviewed de novo by this Court." In re Proposed Town of New Shoreham Project , 25 A.3d at 504 ; see *538 Planned Environments Management Corp. v. Robert , 966 A.2d 117, 121 (R.I. 2009) ("[S]ince we have before us a pure statutory issue, we are mindful of the principle that questions about the meaning of statutes are reviewed de novo by this Court."); see also Portsmouth Water and Fire District v. Rhode Island Public Utilities Commission , 150 A.3d 596, 602 (R.I. 2016) ; Narragansett Electric Co. , 773 A.2d at 240. "[T]his Court always has the final say in construing a statute." In re Proposed Town of New Shoreham Project , 25 A.3d at 506. Since we are confronted with an issue of statutory interpretation in the instant case, our review is de novo .
III
Analysis
The Town contends before this Court that the PUC erred in denying the Town's request for a discounted ferry rate. It avers that granting such a discount is within the powers of the PUC because the PUC has "inherent and plenary powers over all public utility rate[s] * * *." (Emphasis in original.) According to the Town, the PUC in the instant case "unlawfully continued with its self-imposed ban on consideration of nondiscriminatory municipal ferry rate discounts (of any kind) unless the 'regulated' entity authorizes the [PUC] to consider them." (Emphasis in original.) The Town contends that the statute at issue, § 39-2-5(2), unambiguously permits a public utility to propose a discount for a municipality but does not state that the public utility must be the entity that proposes such a discount. The Town then proceeds to contend that "[r]ecognition of the PUC's power to establish rates that include discounts for municipalities performing essential governmental services is necessary and vital in order for the [PUC] to carry out properly its mandate under R.I. Gen. Laws § 39-1-1 to supervise and regulate public utilities and protect the public against improper and unreasonable rates."[5]
In addressing the Town's contentions, we turn to the statutory scheme at issue. General Laws 1956 § 39-1-1(c) provides as follows with respect to the general powers of the PUC:
"[T]here is hereby vested in the public utilities commission and the division of public utilities and carriers the exclusive power and authority to supervise, regulate, and make orders governing the *539 conduct of companies offering to the public in intrastate commerce * * * transportation services and water supplies * * *."
Chapter 2 of Title 39 of the General Laws then goes on to provide for the duties of utilities and carriers. Included in those duties are provisions prohibiting discrimination by utilities and carriers. See §§ 39-2-2, 39-2-3, and 39-2-4. The Town is seeking a discounted rate in the instant case that would, at first glance, seem impermissible under the anti-discrimination provisions. However, § 39-2-5 provides exceptions to the anti-discrimination provisions, and the Town is contending that the following exception applies in the instant case:
"With the approval of the division any public utility may give free transportation or service, upon such conditions as the public utility may impose, or grant special rates therefor to the state, to any town or city, or to any water or fire district, and to the officers thereof, for public purposes, and also to any special class or classes of persons, not otherwise referred to in this section, in cases where the same shall seem to the division just and reasonable, or required in the interests of the public, and not unjustly discriminatory." Section 39-2-5(2).
The resolution of this case hangs on the interpretation of that statutory language.
It is a venerable principle that, in interpreting a statute, "our ultimate goal is to give effect to the General Assembly's intent." DeMarco v. Travelers Insurance Co. , 26 A.3d 585, 616 (R.I. 2011) (internal quotation marks omitted). In that pursuit, we have noted that, "when the language of a statute is clear and unambiguous, [this Court] must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." State v. LaRoche , 925 A.2d 885, 887 (R.I. 2007) (internal quotation marks omitted); see also State v. Graff , 17 A.3d 1005, 1010 (R.I. 2011) ("[T]he plain statutory language is the best indicator of legislative intent.") (internal quotation marks omitted). "Moreover, when we examine an unambiguous statute, there is no room for statutory construction and we must apply the statute as written." LaRoche , 925 A.2d at 887 (internal quotation marks omitted).
There are certainly statutory interpretation cases in which a court must engage in what one poet called "the intolerable wrestle [w]ith words and meanings." T.S. Eliot, Four Quartets, "East Coker" pt. 2. This is not one of those cases. The statute at issue is clear and unambiguous: it states that a public utility "may * * * grant special rates * * * to any town * * *." Section 39-2-5(2) (emphasis added). It thus clearly does not give the PUC the power to impose a discounted rate on a public utility; rather, it grants a public utility the power to propose a discounted rate for a town if the public utility chooses to make such a proposal. Due to the fact that A & R Marine did not propose a discounted ferry rate for the Town in the instant case, under the unambiguous terms of the statute, the PUC was without authority to grant such a request from the Town.[6] For that reason, we consider the *540 Town's contentions on appeal to be unavailing.
The Town emphasizes the broad authority of the PUC and its implied powers; it points us to numerous occasions on which we have recognized that broad authority as support for its reading of the statutory scheme at issue. See, e.g. , Town of East Greenwich v. O'Neil , 617 A.2d 104, 110 (R.I. 1992) ; Rhode Island Chamber of Commerce Federation v. Burke , 443 A.2d 1236, 1237 (R.I. 1982) ; Bristol and Warren Gas Co. v. Harsch , 119 R.I. 807, 812, 384 A.2d 298, 300 (1978). However, with respect to the instant case, we simply need go no further than the plain and ordinary meaning of the clear and unambiguous statutory language before us. See LaRoche , 925 A.2d at 887 ; see also Graff , 17 A.3d at 1010. According to § 39-2-5(2), it would have been necessary that a discounted ferry rate for the Town be proposed by A & R Marine, and that plainly did not happen. Therefore, the PUC did not err in denying the Town's request for a discounted rate. It is our conclusion in this case that, before the PUC would have been legally authorized to act upon a discounted ferry rate for the Town, it would have been necessary, pursuant to § 39-2-5(2), for A & R Marine to propose such a discounted rate; but A & R Marine never made such a proposal. Accordingly, we need delve no further into the other provisions of § 39-2-5(2).
Before concluding, we deem it important to note that, just as we hold in the instant case that a discount for a certain class of ratepayers must be proposed by the public utility, so too have we held in the past. In Rhode Island Consumers' Council v. Smith , 111 R.I. 271, 302 A.2d 757 (1973), the PUC directed that the public utility include "in any new tariff a $1.00 per month discount for certain persons 65 years of age or over." Smith , 111 R.I. at 301, 302 A.2d at 775. We held that we could find no authority for the PUC's direction in §§ 39-2-2, 39-2-3, or 39-2-5. Id. at 302, 302 A.2d at 775. And, we further opined as follows:
"While those sections generally prohibit preferential treatment to utility customers, they do, by way of exception, authorize the division to permit a utility to offer free or reduced rate service to an elderly person. But the authority to grant that limited exception does not carry with it the power to compel a utility to afford a reduced rate to senior citizens. Under the statutes the initiative rests with the utility, and the [PUC] cannot, unless so authorized by the Legislature, compel its exercise." Id. (internal quotation marks omitted).
Moreover, in Blackstone Valley Chamber of Commerce v. Public Utilities Commission , 121 R.I. 122, 396 A.2d 102 (1979), the PUC mandated that the first 300 kilowatt hours of electricity used per month by residential customers be exempt from the scheduled increases at issue. Blackstone Valley Chamber of Commerce , 121 R.I. at 126, 396 A.2d at 104. We determined that the PUC based its determination on statements of "various witnesses who were really seeking a 'lifeline rate' which would have been designed for the benefit of elderly or poor residential users," rather *541 than on a request from the public utility. Id. We then definitively stated that "such a rate could not have been imposed as to elderly customers unless the initiative were taken by [the public utility] rather than the [PUC]." Id. In the instant case, we follow the same logic.
Accordingly, for the above-stated reasons, we affirm the Report and Order of the PUC denying the Town's request for a discounted ferry rate for municipal vehicles and passengers performing essential governmental services.
IV
Conclusion
For the reasons set forth in this opinion, we affirm the June 2, 2017 Report and Order of the Public Utilities Commission. We remand the record to the Public Utilities Commission with our decision endorsed thereon.

Prudence Island is part of the Town of Portsmouth. See Town of Portsmouth, Prudence Island , https://www.portsmouthri.com/330/Prudence-Island (last visited January 15, 2019).

General Laws 1956 § 39-2-5(2) provides as follows:
"With the approval of the division any public utility may give free transportation or service, upon such conditions as the public utility may impose, or grant special rates therefor to the state, to any town or city, or to any water or fire district, and to the officers thereof, for public purposes, and also to any special class or classes of persons, not otherwise referred to in this section, in cases where the same shall seem to the division just and reasonable, or required in the interests of the public, and not unjustly discriminatory."

The term "the Division" in the quoted passage from the oral argument refers to the Division of Public Utilities and Carriers (the Division).
In differentiating between the PUC and the Division, we have stated that "the General Assembly intended * * * to segregate the judicial and administrative attributes of ratemaking and utilities regulation and to vest them separately and respectively in the [PUC] and the [Division]." Narragansett Electric Co. v. Harsch , 117 R.I. 395, 402, 368 A.2d 1194, 1199 (1977). We have further elaborated as follows:
"The division is legally and functionally separate from the PUC. As set forth in G.L. 1956 § 39-1-3, the General Assembly established the PUC and the division, designating the PUC as a quasi-judicial tribunal and the division, which exercises powers not specifically assigned to the PUC. Specifically, those powers include implementing the policies of the state in regulating the public utilities to achieve the ultimate policy goals of providing for adequate, efficient, and economical energy, communication, and transportation services and water supplies at just and reasonable rates." In re Kent County Water Authority Change Rate Schedules , 996 A.2d 123, 125-26 (R.I. 2010) (internal quotation marks omitted); see also In re Proposed Town of New Shoreham Project , 25 A.3d 482, 487 n.2 (R.I. 2011).
Additionally, "[t]he Division * * * is statutorily charged with representing the interests of the public, as its advocate, in rate proceedings before the [PUC]." In re Island Hi-Speed Ferry, LLC , 746 A.2d 1240, 1244 n.6 (R.I. 2000).

There was some debate among the parties as to whether or not the petition for the issuance of a writ of certiorari was timely filed. However, that issue was resolved in favor of the Town by this Court's April 30, 2018 denial of the motions to dismiss that had been filed by the PUC and A & R Marine.

A & R Marine contended in its filings before this Court that the Town's request for a discounted ferry rate in the instant case is barred by the doctrines of res judicata and collateral estoppel, in view of the fact that the 1993 Order held that § 39-2-5(2) required that the utility propose a discounted rate for a municipality before the PUC could consider the discount.
For either the doctrine of res judicata or the doctrine of collateral estoppel to be even arguably applicable as a bar to the relitigation of issues raised by the Town in the instant case, a prerequisite would be that the 1993 case and the instant action be between the same parties or parties in privity with them. See Kenlin Properties, LLC v. City of East Providence , 139 A.3d 491, 497-98 (R.I. 2016) ("[C]ollateral estoppel applies when the case meets three requirements: (1) the parties are the same or in privity with the parties of the previous proceeding; (2) a final judgment on the merits has been entered in the previous proceeding; [and] (3) the issue or issues in question are identical in both proceedings.") (internal quotation marks omitted); Hall v. State , 60 A.3d 928, 932 (R.I. 2013) ("Res judicata bars the relitigation of any issue that could have been litigated in a prior proceeding, including a direct appeal, that resulted in a final judgment between the same parties, or those in privity with them.") (internal quotation marks omitted). A & R Marine conceded at oral argument before this Court that the Town was not in fact a party to the 1993 case. Neither A & R Marine nor the PUC has suggested that the Town is in privity with any entity involved in that 1993 case. As such, the doctrines of res judicata and collateral estoppel are inapplicable to this case.

We note that it is a matter of disagreement among the parties whether or not the PUC actually reached the legal conclusion in the instant case that, in the Town's words, "a 'prerequisite' for PUC consideration of any type of municipal discount is that the regulated entity requesting the [PUC's] permission to increase rates charged to the public must propose such a discount." The Town contends that the PUC did reach such a legal conclusion. A & R Marine and the PUC contend that it did not. Having extensively reviewed the Report and Order at issue, we are in agreement with the Town. Even if we agreed with A & R Marine and the PUC, we may affirm on grounds other than those relied upon by the PUC. See Miller v. Metropolitan Property and Casualty Insurance Co. , 111 A.3d 332, 339 (R.I. 2015) ("[I]n reviewing the trial justice's legal determinations, this Court has a prerogative to affirm a determination of a trial justice on grounds different from those enunciated in his or her decision[,] as well as a prerogative to overturn such a determination on different grounds.") (internal quotation marks omitted).