February 27, 2023

**Supreme Court**

No. 2020-106-M.P.
(Docket No. 4981)

In re Petition of the Episcopal Diocese   :
    of Rhode Island for Declaratory
    Judgment on Transmission System
    Costs and Related "Affected System
        Operator" Studies.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

In re Petition of the Episcopal Diocese   :
  of Rhode Island for Declaratory
Judgment on Transmission System
Costs and Related "Affected System
        Operator" Studies.


Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Long, for the Court.**  This case came before the Supreme Court after we granted a request from the petitioner, the Episcopal Diocese of Rhode Island (petitioner or the diocese), for a writ of certiorari.  The diocese seeks review of an order of the Rhode Island Public Utilities Commission (PUC) that permitted the Narragansett Electric Company d/b/a National Grid (Narragansett) to charge the diocese for electricity transmission costs associated with a proposed solar development project on diocese property in Glocester, Rhode Island.

The diocese claims that the PUC's order is unlawful and unreasonable because (1) the PUC subjected the diocese to a biased proceeding in violation of Rhode Island law; (2) the PUC improperly ignored G.L. 1956 §§ 39-26.3-3(d) and 4.1(a) in its order; (3) the PUC applied the incorrect tariff terms to the project; and (4) the PUC improperly applied federal law.

- 1 -

After issuing the writ, we remanded this matter to the PUC for consideration of newly discovered evidence. Thereafter, subsequent events revealed that the solar development project at issue is no longer subject to the costs in dispute before the PUC. For the reasons set forth in this opinion, we determine that this matter no longer presents a justiciable controversy. Accordingly, we conclude that this matter is now moot and decline to address the merits.

A summary of the facts relevant to our review follows, and additional facts are included in the discussion of the issues.

**Facts and Procedural History**

This matter originates from the diocese's proposed plan to develop solar energy arrays on the grounds of the Episcopal Conference Center and Camp located in Glocester, Rhode Island (project). Beginning in April 2018, Narragansett performed several required studies to assess the feasibility and impact of the proposed project. Narragansett informed the diocese that its proposed project would require Narragansett to conduct additional "affected system operator" studies and further, that these studies required payment of additional costs. Narragansett also informed the diocese that, depending on the results of the affected system operator studies, Narragansett might also charge the diocese transmission system interconnection costs that corresponded to affected system and distribution modifications.

Thereafter, on October 11, 2019, the diocese submitted to the PUC a petition for declaratory judgment pursuant to G.L. 1956 § 42-35-8(c) and 810 RICR 00-00-1.11C. The diocese and Narragansett submitted an agreed statement of facts regarding the project; the diocese sought eight declarations from the PUC that it hoped would both limit Narragansett's cost recovery and prevent delay of the project. Specifically, the diocese challenged Narragansett's authority to impose costs associated with affected system operator studies and any resulting interconnection costs. Ultimately, however, the PUC issued seven declarations in a written order dated April 14, 2020 (April 2020 order), the effect of which was to permit Narragansett to charge the diocese the disputed costs. The PUC also declined to issue a declaration finding delays impermissible on this record.

The diocese timely filed for a statutory writ of certiorari challenging the PUC's order on the four grounds previously outlined. After we issued the writ, the diocese provided this Court with an affidavit setting forth newly discovered evidence pursuant to G.L. 1956 § 39-5-5. The affidavit provided this Court with updated information concerning an ongoing dispute between the diocese and the Division of Public Utilities and Carriers (the division) regarding allegedly impermissible communications between Narragansett and the division. The affidavit further disclosed that the Rhode Island Attorney General found that the division had violated the Access to Public Records Act (APRA) when it failed to turn records of

communications between the division and Narragansett over to the diocese; and the Attorney General therefore ordered production of those records.

We stayed proceedings in this Court and transmitted a copy of the affidavit to the PUC for consideration of this new evidence. The PUC responded with a letter stating that: (1) it had held an open meeting and voted to confirm the April 2020 order; (2) the April 2020 order was based exclusively on legal determinations; and (3) the diocese's new evidence did not alter its interpretation of the relevant law.

We determined that the PUC's decision to hold an open meeting and vote to confirm the April 2020 order constituted an improper exercise of jurisdiction under § 39-5-5. We therefore ordered the PUC to hold a new hearing and provide this Court with findings of fact and conclusions of law consistent with § 39-5-5.

On remand, the PUC held additional evidentiary proceedings, considered supplemental testimony regarding the integrity of its previous order, and issued a second written order. The PUC confirmed the April 2020 order and stated that the supplemental evidence of communications between Narragansett and the division did not alter its interpretation of relevant law. The PUC also highlighted that, during the remand proceeding and for the first time, counsel for the diocese disclosed that, subsequent to the issuance of the April 2020 order, the affected system operator studies concluded that the diocese project would not impact the system at issue. Therefore, Narragansett determined that it would not impose the challenged

- 4 -

interconnection costs on the diocese. Nevertheless, the diocese justified the maintenance of its appeal based on a generalized concern for the integrity of the administrative process and the potential policy implications of the April 2020 order.

This case presents the following question for consideration: Whether the determination by Narragansett that the diocese was not subject to the challenged interconnection costs, made subsequent to the April 2020 order, deprives this Court of a justiciable issue and renders this case moot.

**Mootness**

This Court must address the threshold issues of justiciability in all matters that come before us. *See City of Cranston v. Rhode Island Laborers' District Council, Local 1033*, 960 A.2d 529, 533 (R.I. 2008); *State v. Lead Industries Association, Inc.*, 898 A.2d 1234, 1238 (R.I. 2006) (characterizing the Court's application of the justiciability doctrines as a functional limitation of judicial review and a logical underpinning of the concept of judicial power). We do so even if no party raises the issue. *City of Cranston*, 960 A.2d at 533. Furthermore, our justiciability doctrines apply where declaratory relief is sought, including in the administrative context. *See N & M Properties, LLC v. Town of West Warwick ex rel. Moore*, 964 A.2d 1141, 1144-45 (R.I. 2009) (explaining that claims under the Uniform Declaratory Judgments Act must be justiciable); *Liguori v. Aetna Casualty and Surety Co.*, 119

R.I. 875, 882-83, 384 A.2d 308, 312 (1978) ("Section 42-35-8 is an administrative counterpart of the Declaratory Judgments Act[.]").

The contemporary mootness doctrine has foundational support in the "case or controversy requirement" of Article III of the United States Constitution. *See Town of Portsmouth v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016) (explaining that litigants must "show that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment") (quoting *American Civil Liberties Union of Massachusetts v. United States Conference of Catholic Bishops*, 705 F.3d 44, 54 (1st Cir. 2013)); *see also Lead Industries Association, Inc.*, 898 A.2d at 1237-38 (noting the absence of express language in the Rhode Island Constitution confining our review to actual cases or controversies, but acknowledging this functional limitation to our judicial review). This doctrine imposes a longstanding obligation to confine our judicial review to matters presenting a live case or controversy in the absence of certain exceptional circumstances. *City of Cranston*, 960 A.2d at 533. "If this Court's judgment would fail to have a practical effect on the existing controversy, the question is moot, and we will not render an opinion on the matter." *Id.*; *see Morris v. D'Amario*, 416 A.2d 137, 139 (R.I. 1980) ("As a general rule we only consider cases involving issues in dispute; we shall not address moot, abstract, academic, or hypothetical questions."). "[I]f [a case] raised a justiciable controversy at the time the complaint was filed, but events occurring after

- 6 -

the filing have deprived the litigant of an ongoing stake in the controversy[,]" the case is moot. *City of Cranston*, 960 A.2d at 533 (quoting *Seibert v. Clark*, 619 A.2d 1108, 1110 (R.I. 1993)).

Based on the results of the affected system operator studies at issue before the PUC, and Narragansett's subsequent decision declining to assess interconnection costs on the diocese project, we conclude that this matter fails to present a live controversy for this Court to resolve. The diocese's petition seeks review of an order declaring the propriety of cost assessments that did not in fact materialize; consequently, any judgment from this Court would not have a practical effect on the outcome of the project.[1]

We are not persuaded by the diocese's arguments to the contrary. Specifically, the diocese asserts that our resolution of this matter will impact the time required for, and the cost of, developing future renewable-energy projects; therefore, our review of the April 2020 order will impact the diocese's decision to pursue future solar developments. The diocese further notes that Narragansett currently charges similar costs to other parties, not involved in this case, and argues that these unrelated parties "face the unjust transmission studies appealed here."

---

[1] During oral argument before this Court, counsel for the diocese conceded that Narragansett provided a reimbursement for all costs associated with the affected system operator studies.

However, the diocese's future engagement in different solar energy projects does not present a live controversy related to the April 2020 order. Concluding otherwise would contravene longstanding mootness jurisprudence that prohibits this Court from engaging in either abstract or hypothetical questions. *See Morris*, 416 A.2d at 139. The fact is that, subsequent to the April 2020 order, Narragansett concluded that the diocese was not responsible for the challenged costs at issue. This resolution effectively ended the live dispute between the parties. Were this Court to issue a ruling solely for the purpose of impacting prospective projects, we would be engaging in the practice of providing an unauthorized and impermissible advisory opinion. *See H.V. Collins Company v. Williams*, 990 A.2d 845, 847 (R.I. 2010) ("The Supreme Court will not entertain an abstract question or render an advisory opinion * * * with the exception for constitutionally mandated advisory opinions found in article 10, section 3, of the Rhode Island Constitution."). We decline to do so.

Moreover, the possible impact of the April 2020 order on parties not before this Court also does not present a live controversy. The dispute between Narragansett and the diocese over whether the diocese must pay interconnection system costs for the project has been resolved externally; therefore, any judgment from this Court would not affect the rights, duties, or obligations of the present parties concerning the project. Allowing the diocese to proceed on behalf of parties not before this Court would conflict with our duty to decide only issues presented

- 8 -

by litigants with a vested stake in the outcome. *See City of Cranston*, 960 A.2d at 533, 535. Therefore, the diocese's arguments fail to demonstrate how this matter presents a live issue for this Court to decide and we hold that it is moot.

The diocese nevertheless urges this Court to consider this dispute over the development of a renewable-energy project as an exception to the mootness doctrine. Specifically, the diocese asserts that the challenge to the April 2020 order is a matter of extreme public importance that is capable of repetition and evades review, and one that has become moot through Narragansett's voluntary cessation of unlawful conduct.

### A. Extreme Public Importance

This Court will hear an otherwise moot case if we determine that it presents an issue of extreme public importance that is capable of repetition yet evades our review. *City of Cranston*, 960 A.2d at 533. However, we have previously described such matters as those generally implicating "important constitutional rights, matters concerning a person's livelihood, or matters concerning citizen voting rights." *Id*. at 533-34 (quoting *Cicilline v. Almond*, 809 A.2d 1101, 1106 (R.I. 2002)); *see also Whitehouse v. Davis*, 774 A.2d 816, 818 (R.I. 2001) (characterizing the threat of environmental hazards throughout the state as a matter of extreme public importance). This matter does not implicate any of these narrow concerns.

The diocese attempts to assert violations of its due process rights by claiming that the PUC subjected it to a biased administrative proceeding. The diocese notes that counsel for the PUC, when participating in the administrative proceeding, asked questions that allegedly demonstrated a bias in favor of Narragansett; the diocese argues that counsel for the PUC violated G.L. 1956 § 39-1-35 because her husband works at the same law firm that represented Narragansett in this proceeding. However, the suggestion that counsel violated § 39-1-35 does not withstand scrutiny. That provision prevents individuals under the supervision of the PUC, or their family members, from serving as the commissioner or clerk of the commission. *See* § 39-1-35. By contrast, the PUC retains counsel pursuant to § 39-1-19, which contains no similar prohibition. Notwithstanding counsel's husband's association with the law firm representing Narragansett, her involvement in the proceedings falls far short of a constitutional violation.

The diocese also argues that the communications between Narragansett and the division, confirmed by the production of records under the APRA, tainted the administrative proceedings. However, these communications are not sufficient to implicate a violation of due process. The PUC and the division are separate agencies with different functions, and the division did not serve in the same quasi-judicial capacity as the PUC. *See In re A & R Marine Corp.*, 199 A.3d 533, 535 n.3 (R.I. 2019) ("The division is legally and functionally separate from the PUC.") (quoting

*In re Kent County Water Authority Change Rate Schedules*, 996 A.2d 123, 125-26 (R.I. 2010)).

Finally, the diocese seems to suggest that the PUC held a biased remand proceeding based on a commissioner's requests for additional information, a supposedly inadequate procedural schedule, and the PUC's alleged failure to allow the diocese to present its case in accordance with its preferences. We decline to hold that the commissioner's requests for additional information and other generalized allegations of a biased remand proceeding violate the diocese's due-process rights. *See Rhode Island Housing and Mortgage Finance Corporation v. Gordon*, 275 A.3d 559, 567 (R.I. 2022) ("[S]imply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue."). While we recognize the frustrations of the diocese relating to the travel of proceedings necessary for the development of the project, and the shadow cast by communications between the division and Narragansett, these events do not implicate constitutional rights and thereby qualify as matters of extreme public importance. *Hallsmith-Sysco Food Services, LLC v. Marques*, 970 A.2d 1211, 1214 (R.I. 2009) (declining to characterize a matter as one of extreme public importance when the Court's resolution of the issue would fail to have a "pragmatic effect on or raise any real concerns for the citizens of this state").

Similarly, the diocese has failed to demonstrate that the April 2020 order impacts livelihoods in a manner that will evade our review in the future. *See State Department of Environmental Management v. Administrative Adjudication Division*, 60 A.3d 921, 924 (R.I. 2012) (describing this Court's analysis as a two-pronged test). Thus, even assuming that the diocese correctly asserts that the April 2020 order "obstructs market access" for clean-energy projects, aggrieved parties whose livelihoods are impacted maintain the ability to seek review in the courts. *Boyer v. Bedrosian*, 57 A.3d 259, 282 (R.I. 2012) (declining to apply an exception to the mootness doctrine when an opportunity for judicial review exists). Accordingly, we are satisfied that the limited exception for matters of extreme public importance does not apply to this dispute.

### B. Voluntary Cessation

This Court may decide an otherwise moot case when a party voluntarily ceases to engage in challenged or unlawful conduct to end litigation. *See Bucci v. Lehman Brothers Bank, FSB*, 68 A.3d 1069, 1080 (R.I. 2013) (quoting *Boyer*, 57 A.3d at 281); *see also Calvary Chapel of Bangor v. Mills*, 52 F.4th 40, 47 (1st Cir. 2022). When we evaluate whether a party has voluntarily ceased to act in an attempt to moot a case, we assess whether "subsequent events [have] made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Bucci*, 68 A.3d at 1080 (emphasis omitted) (quoting *Friends of the Earth, Inc. v.*

*Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)).  Moreover, the party asserting mootness must persuade the Court that it will not simply resume the challenged conduct after the case is dismissed. *Id.*  For example, in *Bucci v. Lehman Brothers Bank, FSB*, we determined that a party's change of internal policy constituted a voluntary cessation of the challenged conduct and was therefore insufficient to moot the case. *See Bucci*, 68 A.3d at 1080-81.

The diocese highlights the procedural context of its request for a declaratory order and the history that preceded it: the diocese sought declarations on an agreed statement of facts after working on its proposed project for over a year.  Only after the April 2020 order issued and the diocese sought review in this Court did Narragansett determine that it would not impose the challenged interconnection costs on the diocese.  The diocese argues that, by voluntarily ceasing to impose the interconnection costs, Narragansett moots the case; and that Narragansett will negatively impact the renewable-energy sector by continuing to rely on the precedent established by the April 2020 order.

This argument does not satisfy the voluntary-cessation exception.  The relevant renewable-energy project at issue is the diocese project.  Narragansett's decision not to impose interconnection costs on the project did not result from an internal policy change; rather, the decision derived from affected system operator studies that concluded that the project will not impact the transmission system.

- 13 -

Moreover, Narragansett has demonstrated that, due to the federal-state regulatory framework at issue, it cannot impose the interconnection costs on the project without prior regulatory approval. Thus, there is a sufficient basis to conclude that Narragansett will not attempt to charge the interconnection costs upon dismissal of this appeal.

We acknowledge the diocese's frustration with the prolonged and costly process it has faced in attempting to develop its renewable-energy project, and we do not take issue with the diocese's goal to develop Rhode Island's renewable-energy future. However, the lengthy project history and administrative proceedings do not change the fact that the underlying issue—whether Narragansett can appropriately impose interconnection costs on the diocese's project—is no longer a live question for this Court to decide. Further, Narragansett cannot reasonably be expected to charge the diocese the disputed costs. Although the diocese might wish to have this Court review the declarations issued by the PUC to provide greater clarity to the renewable-energy industry, this policy argument fails to demonstrate that Narragansett will attempt to impose these costs on the diocese project in the future. Therefore, we decline to apply the voluntary cessation exception to this matter.

Without an actual case or controversy for this Court to resolve, we conclude that this matter is moot and exceptions to the mootness doctrine do not apply.

Despite the diocese's apparent frustrations, this Court is unable to provide the relief it sought, and its concerns are best left to the General Assembly for further resolution.

## Conclusion

Based on the foregoing, we dismiss the diocese's challenge to the PUC's order as moot and remand the record to the PUC.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | In re Petition of the Episcopal Diocese of Rhode Island for Declaratory Judgment on Transmission System Costs and Related "Affected System Operator" Studies. |
| **Case Number** | No. 2020-106-M.P.<br>(Docket No. 4981) |
| **Date Opinion Filed** | February 27, 2023 |
| **Justices** | Suttell, C.J., Goldberg, J., Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | The Rhode Island Public Utilities Commission |
| **Judicial Officer from Lower Court** | N/A |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>Seth H. Handy, Esq. |
| | For Respondent:<br><br>Katherine B. Savage, Esq.<br>Tiffany A. Parenteau, Esq. |